(*) HAMILTON *versus* BUCK.

Where several owners of logs separately employ the same drivers, or where they separately contract for the driving with a person, who employs the same drivers, and, in the drive, all the logs get intermixed, their respective liens are not collectively upon the whole mass of logs, but are distributed upon the logs of each ownership, according to the amount of labor bestowed thereon.

ON FACTS AGREED.

CASE against a deputy sheriff for neglect to keep, to be sold on execution, a quantity of mill-logs which he had attached on the writ.

The Messrs. Hodgkins owned a small quantity of logs, 71 thousand feet, of a distinct mark, and employed John Pomroy to drive them down the river at seventeen cents per thousand, that being a fair price. Pomroy also contracted with other owners to drive their logs, making in his drive six millions of feet; the logs of each owner being marked with distinctive marks, and for that purpose Pomroy employed from

thirty to fifty men, and among others, this plaintiff, who labored upon the whole drive, the logs of all the owners having become intermixed.

For that labor, the plaintiff sued Pomroy and attached all of Hodgkins' logs, in season to secure any lien which he could have thereon.  The defendant was the officer, who made the attachment, and into his hands the plaintiff, (after having recovered judgment against Pomroy,) seasonably placed his execution, with directions to seize and sell the logs of Hodgkins, which had been so attached.

But the officer did not so sell the logs, having previously surrendered them to Hodgkins, who gave him an indemnifying bond.

It is for that surrender and that neglect to sell, that this suit is brought.

*C. S. Crosby*, for the plaintiff.

The only question designed to be submitted to the Court is, whether a laborer, working on a large drive of logs, consisting of various marks, and belonging to different owners, and who has a lien for his personal services thereon, can enforce that lien in whole upon one particular mark of logs belonging to one only of the persons interested in the whole drive, or whether he must enforce his lien *pro rata* upon the several lots or parcels.

The case of *Spofford* v. *True*, 33 Maine, 283, does not exactly meet this case, but the reasoning of the Court in that case is strongly for the plaintiff in this.

To hold that the laborers, under the circumstances of this case, must resort to all the different lots of logs embraced in a drive, and enforce their liens *pro rata* upon such parcels, would be too onerous upon the laborers to render their lien of any value.  How can they learn the exact quantity or number of logs embraced in each mark, or even in the whole drive ? Very frequently a large part of a drive is left behind, " hung up" for want of water, and the balance only of the drive comes to the boom, and the contractor for the whole drive, (in this case it was Pomroy,) will be paid only for what he

gets in according to his contract. In such a case how is the lien to be enforced *pro rata?* All the logs of one mark may be left behind and must the laborer wait until another year before he can get his pay by enforcing his lien upon the lot left behind?

It is no hardship upon the several owners to hold that the lien of the laborer extends to all and to each parcel of the logs for his whole services. Each owner knows, and can prove, the exact quantity of his logs ; and each pays the contractor *pro rata,* and if any one man's logs are seized by laborers having a lien thereon, and that man is compelled to pay more than his proportion of the whole bill, he may compel the other owners to contribute.

To compel the laborers to enforce their lien upon each mark of logs would hold out an inducement to log owners to make their driving contracts with worthless and insolvent men at a low price, so that the contractor might easily defraud the laborer of his pay, for there would need to be so great a degree of accuracy in enforcing the lien upon the several parcels of logs, that no man would hazard the experiment.

*A. W. Paine,* for the defendant.

APPLETON, J. — The case presented for consideration is not without its embarrassments, arising from the conflicting rights and interests of the laborer and the owner of the lumber upon which his labor has been performed. The object of the Legislature, as is abundantly indicated in the title of the Act under which the plaintiff claims, stat. 1848, c. 72, was to give to " laborers on lumber a lien thereon." The Act, in its terms, gives this lien on " all logs and lumber," and provides that any person having such lien " may secure the same by attachment."

Hodgkins, the defendant in interest, owning about seventy-one thousand feet of lumber, employed one Pomroy to drive them to market, at a stipulated price per thousand. Pomroy having contracted with others to drive their logs, to the amount

of six million feet, mingled the logs of Hodgkins therewith and employed the plaintiff and others to drive the whole quantity thus contracted to be driven. The labor of the plaintiff was on the whole mass and but a trifling fraction upon the property of Hodgkins.

While it is desirable that the laborer should receive all due protection, it must not be forgotten that others have rights, which the same law should protect. The statute gives a lien on " all logs and lumber." Hodgkins had nothing to do with the six millions driven by Pomroy, was no party to, nor conusant of, any contract by which they were to be driven, and the question is, whether others, by contracting with the same individual, can impose on his logs a lien for driving their own, with which he had no connexion, in which he had no interest, and of which he had no knowledge. If his logs are to be burthened with any other lien than that arising from the work and labor done thereon, then the burthen thus imposed, may be indefinite in extent.

A lien is a qualified ownership, enforced by detention of the property till the claim resting upon it shall be paid and satisfied. It usually arises from the act of the owner. In the present case it is matter of statutory enactment, and the only question is, what construction shall be given to that enactment. All the logs and lumber driven are subject to a lien. But if the owners of different quantities severally contract with sufficient laborers to drive their own logs, the lien of such laborers is solely upon the logs they were employed to drive, notwithstanding the logs of all the several owners were intermixed in driving, and were driven collectively by all the laborers employed by all the owners. *Doe* v. *Munson*, 33 Maine, 430. If the different owners, by different contracts, employ the same person to drive their logs, is each lot jointly and severally liable for its own expenses, as well as for those of other lots driven at the same time ? If each lot is so liable, then a lien on the logs of A may be enforced against those of B, and the property of one man be taken to pay the debts of another, between whom there is no privity of estate or of

contract. A similar question arose under R. S., c. 67, in refer-ence to which Mr. Justice SHEPLEY, in *Marsh* v. *Flint*, 27 Maine, 478, remarks as follows: — " The question therefore arises, whether logs owned by one person may be seized, libel-led and sold to pay, not only the expense incurred in driving them, but also the expenses incurred in driving the logs own-ed by another person. A construction of the statute that would premit this, must rest upon the conclusion that the Legislature intended to allow the property of one person to be taken to pay the debt of another. If this were the design, it would exhibit an attempt to violate private rights not permit-ted by the constitution." If the lien is on the portion of each owner, jointly and in severalty, then there is no mode by which the owner may relieve his own property, except by discharging all the liens resting upon whatever logs may have happened to have been driven at the same time.

In *Spofford* v. *True*, 33 Maine, 283, logs cut under different contracts, with and for the same person, were by consent or permission mingled together, and it was held that this should not affect the rights of the laborers so as to deprive them of their lien, but that it attached to all the logs thus mingled to-gether. But nothing in this case shows that Hodgkins knew of, or consented, that his logs were to be run with those of others; still less, that he was so associated in interest with others, that they were or should be held as security for the logs of other owners which might be driven with them.

The statute is in most general terms, and seems to make no provisions for the various contingencies which may arise un-der its provisions. As the debt is that of Pomroy alone, and the lien is on all the logs driven, the liability of the officer must be only for the lien which the plaintiff has on the logs attached. Any other result would impose on the defendant in interest the obligation of paying the whole expenses, how-ever large, of driving any lot of logs, hower great, with which his own may have been commingled without his knowledge or consent.

SHEPLEY, C. J., and TENNEY, RICE and HATHAWAY, J. J., concurred.