## DE BARY et al. v. SOUER.

(Circuit Court of Appeals, Fifth Circuit. April 24, 1900.)

No. 859.

1. INTERNAL REVENUE—TAX ON WHOLESALE LIQUOR DEALERS—PLACE OF MAKING SALES.

Where a wholesale liquor firm, having an office in New York, where it pays the internal revenue tax required of such dealers by Rev. St. § 3244, accepts orders at such office, and directs the delivery of the goods thereon from a public warehouse in New Orleans, in which they are stored, such sales are made in New York, and not in New Orleans. and do not render the firm subject to a second tax as a dealer at New Orleans.

2. SAME—CONSTRUCTION—STATUTE.

There is no reason requiring a statute imposing special internal revenue taxes to be construed liberally in favor of the government, but it should be construed fairly and judicially, with reference to both parties.

In Error to the Circuit Court of the United States for the Eastern District of Louisiana.

John D. Rouse and Wm. Grant, for plaintiff in error.

J. Ward Gurley, for defendant in error.

Before PARDEE and SHELBY, Circuit Judges, and BOARMAN, District Judge.

BOARMAN, District Judge. This suit is against L. J. Souer, who is the collector of internal revenue at New Orleans, La. It is to recover from him the sum of $100, with interest and costs. Plaintiffs allege that the said Souer, as such collector, assessed against

them, as wholesale liquor dealers at New Orleans, La., a special tax of $100 for the year ending June 30, 1899, which they paid under protest to said Souer, collector. Plaintiffs allege that said assessment and collection of said sum was without authority in law, and they were in no way liable therefor. They allege, further, and the transcript shows, an admission by defendant, Souer, of this allegation, that they appealed in vain to the commissioner of internal revenue to have the said sum returned to them. Section 3244 of the Revised Statutes, under which the collector assessed, provides "that wholesale liquor dealers shall each pay $100. Every person who sells, or offers for sale, foreign or domestic distilled spirits, wines or malt liquors, * * * in quantities not less than five wine gallons at the same time, shall be regarded as a wholesale liquor dealer." The contention of the plaintiffs in error was that they were importers of wines and liquors, and, as such, carried on the business of a wholesale liquor dealer at New York, where they paid annually the special tax imposed on such business by the revenue laws; that they never carried on such business in the city of New Orleans, nor in the state of Louisiana; that they never had an office or any place of business in the said state; that they never had any agent therein authorized to sell their goods, or to offer them for sale; that they never, in said city or state, sold or offered for sale, any foreign or domestic distilled spirits, wines, or malt liquors. In further support of the contentions of plaintiffs in error, they called two witnesses, the first being a member of the firm of Frederick De Bary & Co., to show that they had paid the government a wholesale liquor tax for carrying on business in the city of New York for the year ending June 30, 1899; that said firm did not, since June 3, 1895, either sell, or offer to sell, in the city of New Orleans, any foreign or domestic distilled spirits, wines, or malt liquors in any quantities; that they imported wines and liquors at the port of New Orleans, which they caused to be stored in a warehouse, and that, when sales were made in New York by the New York office direct to the trade at any place in the United States, deliveries of such goods were made to purchasers thereof on orders from the New York office to the warehouse people in New Orleans, with whom the imported goods were temporarily stored. Plaintiffs in error further offered the testimony of the warehouse keeper himself, at New Orleans, to show that they stored their goods with him since August, 1895, but that his (the warehouseman's) connection therewith was to enter the goods when imported, store and deliver them, or ship the same, as ordered by plaintiffs, in accordance with sales made by the plaintiffs' firm at New York; that the warehouseman himself never sold, nor offered to sell, or never had any authority to sell, any of plaintiffs' goods so stored with him; that the plaintiffs never had any place of business in New Orleans, or any agent there authorized to sell, or offer to sell, their goods. The defendant in error offered several witnesses to show a condition of things adverse to the state of case shown by the testimony of plaintiffs in error. Counsel for the plaintiffs in error asked the judge to charge the jury as follows:

"That unless the jury shall find from the evidence that the plaintiffs either sold, or offered to sell, foreign or domestic distilled spirits, wines, or malt liquors, in quantities not less than five gallons at the same time, in the city of New Orleans, they must find a verdict for the plaintiffs for the amount claimed. (2) If the jury shall find that the plaintiffs accepted, at their New York office, orders for their goods, and directed their delivery from a warehouse in New Orleans, then the sale thereon was made in New York, and not in New Orleans, and they must find a verdict for the plaintiffs for the amount claimed."

The defendant in error sought, in the trial court, to contradict the material testimony by which plaintiffs in error showed that none of their liquors were sold, or offered for sale, at New Orleans. The trial judge, proceeding on the theory that there was no conflict on the issues of fact, refused the charges tendered by the plaintiffs' in error, and directed a verdict for the defendant in error. The refusal to give the two charges cited above is assigned as error.

The undisputed evidence, all of which we find in the transcript, seems to fully sustain the contention of plaintiffs in error that they never sold, or offered for sale, any of the wines or liquors which they kept on storage in the public warehouse at New Orleans; that they had their place of business in New York, where they entered into and made all the contracts for the sale of liquors and wines held on storage in the city of New Orleans; and that the liquors on storage in New Orleans, and so sold by them, were delivered by the warehouseman to the purchasers on orders in their favor. It was further shown that the said liquors, on their arrival at New Orleans, were often not put in the warehouse, but delivered to dealers, who had purchased them at New York, from the steamship landings; that the warehouseman delivered the goods to such purchasers in the original packages, and they never had an agent in New Orleans authorized to offer for sale, or to sell, the goods held for their account in the warehouse.

The government does not contend that the liquors were sold, or offered for sale, by plaintiffs in error at New Orleans. Its contention is that their acceptance of orders sent to them at New York, and the delivery or shipment of the goods there sold, by the public warehouseman at New Orleans, constitutes in law a sale at the latter place. Under the common law, a sale is a contract for the transfer of property from one person to another for valuable consideration, and three things are requisite to its validity, viz. the thing sold which is the object of the contract, the price, and the consent of the contracting parties. Under the law of Louisiana, a sale is considered completed as soon as there is "an agreement for the object and for the price thereof, although the object has not already been delivered or the price paid." Rev. Civ. Code, art. 2456. Where a sale results by the acceptance of an order, the sale is made where the order is accepted. Shuenfeldt v. Junkermann (C. C.) 20 Fed. 357.

Benjamin on Sales, speaking of the formation and completion of sales (page 1), says:

"By the common law, a 'sale' may be defined as a transfer of the absolute property in a thing for a price in money. * * * All that was required

to give validity to a sale of personal property, whatever may have been the amount of value, was the mutual assent of the parties to the contract. As soon as it was shown by any evidence, verbal or written, that it was agreed by mutual assent that one should transfer the absolute property of the thing to the other for a money price, the contract was completely proven and binding on both parties. If, by the terms of the agreement, the property in the thing sold passed immediately to the buyer, the contract was termed, in the common law, 'a bargain and sale of goods.' "

A primary, material, and essential result which, by operation of law, flows from a completed sale, is that the title to the property in the thing sold passes, or has passed, out of the seller into the purchaser. It will be seen, from the authorities, that delivery is not an essential element in or to the completion of a sale of personal property. Delivery, in its legal sense, may denote a transfer of title to the thing sold, or it may mean a transfer of possession. In some cases between the parties, as well as between them and other persons affected by a completed "contract of bargain and sale of goods," it may become necessary to consider whether the reciprocal obligations imposed by the terms of the sale, on the seller and buyer, have been performed. In such cases, delivery, whether constructive or actual, may be an evidence of performance. In the case we are considering, there is no question at issue of performance by either the seller or buyer of the liquors stored at New Orleans. It does not seem necessary to discuss the incident of delivery, or its effect on the sales made at New York by the plaintiffs in error. We have been referred by the counsel for the government, by way of an authority, to a letter emanating from Internal Revenue Commissioner Scott (1 Synopsis of Decisions Treas. Dept. vol. 1, p. 647). The letter relates to a subject-matter not dissimilar to the case we are considering. We quote from the concluding paragraph of the letter as follows:

"A distinct and separate special tax is required to be taken out by a liquor dealer at every place at which he completes sales by deliveries of liquors, without having made prior constructive deliveries thereof to his customers at his regular place of business for which he holds requisite stamp."

It seems to be conceded by the author of the letter we have just mentioned that, if a constructive delivery of the liquors in question was made at New York by the vendors, the license taken out by the plaintiffs in error covers their right to sell, without additional tax at New Orleans, under the statement of facts shown in the record. The facts in the record show clearly enough that there was a constructive delivery made at New York to the purchasers of such goods as were, at the time of the completed sale, in the warehouse at New Orleans.

We do not agree with the suggestion of counsel for the defendant in error that the statute imposing a license tax should be liberally construed in favor of the government. We think the language embodied in the statute should be fairly and judicially construed, as between both parties. It is true that the intendment of the statute is to impose and collect revenues for the government. It may be said, further, in reply to the suggestion of counsel, that the government, in the exercise of its legislative will, imposes all the

license taxes required of traders, and that in so doing the statutes relating to the collection of the revenues essential for its support contain language satisfactory and ample to state and make clear the extent of the liabilities it imposes on a licensee before he can enter into commerce at any place in the United States. The courts should hold the trader who enters competitive commerce to a full discharge of the obligations lawfully imposed on him, but the obligation should be measured and determined by judicial interpretation of the law.

The plaintiffs in error have paid a license tax for 1898 at New York for the privilege of selling and offering to sell liquors in the United States. The government, in stating the conditions under which a trader becomes a debtor for a license, says that whoever "sells or offers for sale liquors," etc., shall pay special tax. The words, "sells or offers for sale," are used in their legal sense, and we must give such fair, judicial interpretation to them in this case as we would or should in a case where the government was not a party. Presumably, so far as the evidence discloses the transaction between the seller and buyer, a transfer by operation of law of the title in the property sold was made by plaintiffs in error to the purchaser wherever he may have been. It may be, too, that the delivery order, which seems to have been transmitted to the warehouseman at New Orleans, designated and made certain the quantity and quality of the goods sold by plaintiffs in error at New York. If such should prove to be the case, it may follow, presumably by operation of law, that delivery, constructively, was thereby made at New York. Under the legal import of such orders, and a fair view of the facts, it may follow, too, that the warehouseman, as soon as the orders were transmitted from the seller to the buyer, ceased to be the bailee of the commercial house at New York, and became a bailee of the purchaser.

It will be seen that we have assumed, as it appears to have been assumed by the trial judge as well as by the counsel on either side, that the evidence is free from conflict upon material issues of fact. We do not think such is the case, nor are we able to discover any evidence, either direct or circumstantial, which makes it at all certain that plaintiffs in error ever sold at any place liquors in quantities of more than five gallons.

We have considered and passed upon the questions of law submitted in the charges refused by the court as if the evidence warranted certain presumptions of fact; but we do not mean, in disposing of the case adversely to the defendant in error, to say that such presumptions of fact, as we have suggested, would be authorized if all the facts illustrating the transactions, the legal import of the delivery order, and other issuable matters of fact had been given to the jury.

The whole question as to whether the sale was completed at New York, as well as to the matter of constructive or actual delivery, may depend on the delivery orders. The language of the orders is not given in the evidence. They might show that it was the intention of the parties to defer the completion of the sale and the mat-

ter of delivery until one or the other of them could or should or had done something provided for in their stipulation. The evidence disclosed in the record is faulty in its limitations on material issues of fact, but, however its meagerness may have made it difficult for the jury to satisfactorily determine the issuable matters, we think the trial court erred in directing a verdict for the defendant in error.

Applying the rules of law relating to sales which we have shown are well founded in the civil as well as in the common law to the evidence in the case, we think the jury, if the case had been given to it, might fairly have concluded that "the bargain and sale" of the goods sold was completed in, and constructive delivery was made at, New York. The charges refused were directed to the purpose of presenting the law applicable to the facts, and those facts, together with the presumptions of fact fairly deducible from them, forbade the government to collect a wholesale liquor tax at New Orleans from the plaintiffs in error, and the charges should have been given to the jury. The judgment of the circuit court is reversed, and the case is remanded, with instructions to grant a new trial.