DAYTON BRASS CASTINGS CO. v. GILLIGAN, Internal Revenue Collector.

(District Court, S. D. Ohio, W. D. September 23, 1920.)

No. 37.

1. **Internal revenue ☞4—Statutes construed to effect purpose.**
    The internal revenue statutes are not to be strictly construed as penal statutes, but are to be construed to carry out the intention of the Legislature, though not to be extended by implication beyond the clear import of their language.

2. **Internal revenue ☞9—Corporation which casts metal furnished by contractor into rough parts for fuses is "manufacturer."**
    A corporation which, under a contract with a maker of munitions, cast metal furnished by the maker into rough castings and returned them to the maker, to be finished for use in shell fuses, is a "manufacturer," within the war munitions tax provisions of Act Sept. 8, 1916 (Comp. St. §§ 6336¼a–6336¼m); it not being necessary that a manufacturer produce a finished product.

    [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Manufacturer.]

3. **Internal revenue ☞11—Rough fuse castings are "relatively complete parts."**
    Castings made for use in shell fuses, though still in their rough condition and requiring numerous processes to prepare them for such use, cannot be used without further treatment for any purpose other than that for which they were designed, and are "relatively complete parts," within the regulations of the Commissioner of Internal Revenue relating to the war munitions tax.

4. **Internal revenue ☞11—Corporations casting metal and delivering it to owner "dispose of" castings.**
    Within Act Sept. 8, 1916, §§ 301, 302, 304 (Comp. St. §§ 6336¼b, 6336¼c, 6336¼e), imposing a war munitions tax on those who sell and dispose of munitions or parts thereof, the words "dispose of" ·must be given some meaning in addition to that of sale, and, when given their ordinary meaning of passing an article into the control of another, include delivery of castings made by the casting company from metal furnished by the one to whom the castings were delivered.

    [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Dispose of.]

5. **Internal revenue ☞11—In proviso exempting "sale and delivery," delivery without sale is not excluded.**
    The proviso in Act Sept. 8, 1916, § 301 (Comp. St. § 6336¼b), exempting the sale and delivery of certain articles from the war munitions .tax, does not show that the tax was levied only on munitions or parts sold, since every sale includes delivery, and therefore the conjunction should be read "or," so that the provision applies to deliveries without sale; "delivery" in its legal sense denoting a transfer of possession, either with or without a sale.

    [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Delivery; Second Series, Sale and Delivery.]

6. **Internal revenue ☞11—Provision for assessing tax on fair market price does not make act inapplicable to delivery without sale.**
    The provision of Act Sept. 8, 1916, § 303 (Comp. St. § 6336¼d), for determining the munitions tax in case of articles sold below the fair market price to evade payment of the tax, does not prevent the imposition of the

tax on a manufacturer of castings for shell fuses from metal furnished him by the maker of the fuses.

**7. Internal revenue ⊙⟫11.—Company casting metal furnished by contract is special owner, liable to tax.**

A corporation which received from a munitions maker metal owned by the maker, and made therefrom castings for shell fuses, which it returned to the maker, had a lien on the metal for its labor thereon and its profits, which made it a special owner of the metal, taxable under Act Sept. 8, 1916, imposing a tax on manufacturers of war munitions.

**8. Internal revenue ⊙⟫38.—Interest on wrongful penalty waived by unconditional acceptance of return.**

Interest on a penalty wrongfully imposed under the Internal Revenue Law can be recovered only as damages, and where the penalty, when repaid, was accepted without any reservation that its acceptance should not affect the right to interest, there can be no subsequent recovery of interest.

At Law. Action by the Dayton Brass Castings Company against A. C. Gilligan, United States Collector of Internal Revenue, to recover a tax paid under protest. Judgment for defendant, except as to the item of interest on the penalty collected from plaintiff.

McMahon & McMahon, of Dayton, Ohio, for plaintiff.

James R. Clark, U. S. Dist. Atty., of Cincinnati, Ohio, for defendant.

SATER, District Judge. The plaintiff is a corporation "formed for the purpose of manufacturing and selling brass, bronze, aluminum, white metal, and all other kinds of metal castings, machining same and doing all things incident thereto." The Recording & Computing Machines Company (hereafter called the Recording Company) had a contract with the Canadian Car & Foundry Company for delivery of a large number of time fuses for shrapnel shells for the Russian government. Each fuse, when assembled and completed, consisted of 45 parts. On May 27 and 29, 1915, plaintiff entered into contracts with the Recording Company to make for use in fuses, from ingots and patterns to be supplied by such company, certain rough castings, to be paid for by the pound and to be delivered at such company's plant.

Plaintiff performed its contracts. The work done by it concerned but 4 of the 45 parts entering into a completed fuse. None of such 4 parts was at the time of their delivery fitted for insertion into fuses. On the contrary, the Recording Company was required to subject such parts to numerous mechanical operations, varying according to circumstances from 16 to 29, before they were perfected for use. The castings made by plaintiff, if not used in fuses, were serviceable only as scrap, and would have to be melted and properly treated to be utilized for other purposes. Down to the date of the above-mentioned contracts, plaintiff had practically at all times used its own raw material in its manufacturing business and sold its own product; but in its 12 years' experience it had sent out castings which were thereafter to be finished by machine work. Such subsequent finishing is a common practice, for the reason that castings are seldom ready for use after coming from the molds.

⊙⟫For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The plaintiff, being advised by counsel of unquestioned ability and standing that it was not subject to the war munitions tax imposed by the act of Congress approved September 8, 1916, entitled "An act to increase the revenue, and for other purposes" (39 Stat. 756, 781, 782 [Comp. St. §§ 6336¼a–6336¼m]), made no return to the internal revenue collector under such act. In the latter part of June, 1917, the plaintiff was duly notified to make a return. The Commissioner of Internal Revenue, after a hearing before him, requested that the return be filed under protest, without prejudice to the rights of the parties. A return was filed with the defendant, accompanied by plaintiff's formal protest as to liability. Following a hearing on such protest, plaintiff was directed to pay as a tax the sum of $18,860.83, and a penalty of 50 per cent. additional ($9,430.42) for failure to make a return within the statutory time. The tax and penalty so assessed were paid under protest on December 8, 1917. A claim was at once preferred for a refunder of the tax and penalty, on the ground that the plaintiff was not subject to such tax and was wrongfully required to pay it. The Commissioner of Internal Revenue ordered a repayment of the penalty on the ground that there was reasonable cause for plaintiff's failure to file a return, but otherwise rejected its claim.

Plaintiff thereupon sued to recover interest on the amount of the exacted penalty from December 12, 1917, to June 20, 1918, the date on which it was repaid, and also to recover the sum of $18,860.83, with interest from December 8, 1917. The stated grounds for recovery are that the articles cast and delivered by it were not parts of fuses, that in the performance of its work under the provisions of the contract it was not engaged in manufacturing and was not a manufacturer, and that in delivering the castings in the manner provided for in the contract it did not sell or dispose of them within the terms of the above-mentioned act. A jury was waived and trial was had to the court. There are no controverted facts.

[1] The rule for the construction of revenue laws is thus stated in Cliquot's Champagne, 3 Wall. 114, 145 (18 L. Ed. 116):

"Revenue laws are not penal laws in the sense that requires them to be construed with great strictness in favor of the defendant. They are rather to be regarded as remedial in their character, and intended to prevent fraud, suppress public wrong, and promote the public good. They should be so construed as to carry out the intention of the Legislature in passing them and most effectually accomplish these objects."

The act here in question was under consideration by the United States Supreme Court in the cases of Carbon Steel Co. v. Lewellyn, 251 U. S. 501, 40 Sup. Ct. 283, 64 L. Ed. ——, Worth Bros. Co. v. Lederer, 251 U. S. 507, 40 Sup. Ct. 282, 64 L. Ed. ——, and Forged Steel Wheel Co. v. Lewellyn, 251 U. S. 511, 40 Sup. Ct. 285, 64 L. Ed. ——, all decided March 1, 1920. In the last-named case the rule was recognized that statutes levying taxes should not be extended by implication beyond the clear import of their language. In the Carbon Steel Co. Case the purpose of the act is thus defined:

"It was such profits [i. e., of the contractor] that the act was intended to reach—profits made out of the war and taxed to defray the expense of the

war. Or, as expressed by the Court of Appeals, Congress 'felt that the large abnormal profits incident to these war contracts created a remunerative field for temporary taxation.' "

The court refused to accept a construction which would "reduce the statute to empty declarations."

[2] The plaintiff did not deliver raw material to the Recording Company. The labor performed by it on the Recording Company's metal changed its form into rough given-shaped castings adapted to use, after further treatment, as essential parts of fuses; but the castings were an advance upon the raw material. The Court of Appeals of this circuit has held that, if the application of labor to an article effects some transformation in the character of the article, and converts it into a new and different article, having a distinctive name, character, or use, such article is a manufactured article, and the person producing it is a manufacturer. City of Memphis v. St. L. & S. F. R. Co., 183 Fed. 529, 539, 106 C. C. A. 75. In manufacturing, the raw material may be subjected to different steps or processes for the production of a finished article, and each of such steps or processes will involve manufacturing. In Tide Water Oil Co. v. U. S., 171 U. S. 210, 216, 18 Sup. Ct. 837, 839 (43 L. Ed. 139), it was said:

"Raw materials may be and often are subjected to successive processes of manufacture, each one of which is complete in itself, but several of which may be required, to make the final product. Thus, logs are first manufactured into boards, planks, joists, scantlings, etc., and then by entirely different processes are fashioned into boxes, furniture, doors, window sashes, trimmings, and the thousand and one articles manufactured wholly or in part of wood. The steel spring of a watch is made ultimately from iron ore, but by a large number of processes or transformations, each successive step in which is a distinct process of manufacture and for which the article so manufactured receives a different name."

In harmony with the doctrine of the last-named case is U. S. v. Riga (C. C.) 171 Fed. 783, in which it was ruled that parts of rough-bored rifles which had been advanced to a condition unfitting them for any other use than in connection with rifles, but which must be subjected to further processes and assembled with other parts in order to be made into a completed article, are manufactured articles.

The insistence in the Worth Bros. Co. Case was that that company's forgings on certain shell bodies made by it for the Midvale Company were not parts of shells, because their development was so far short of the point at which they could be combined with any other component of a shell structure that 29 subsequent progressive steps were necessary on the part of the Midvale Company to complete the manufactured shell. The contention was rejected; it being said by Mr. Justice McKenna:

"Congress did not intend to subject its legislation to such artificialities and make it depend upon distinctions so refined as to make a part of a shell not the taxable 'part' of the law. Besides petitioner understates its work. It did not deliver raw material to the Midvale Company. Certain processes had been performed on the material, giving it a shape adapted to its destination. It was made cylindrical, hollow, with one end closed. It was rough, it is true, but an advance upon the raw material. * * * 'Manifestly,' as counsel for the collector says, 'the shell body was not completely manufactured by either of the companies which were engaged in its production,' but 'by the two act-

ing together,' and each therefore is liable for the profit it made and judgment is affirmed."

The contention made and conclusion reached in the Forged Steel Wheel Company Case were the same as in that of the Worth Bros. Company. The Forged Steel Wheel Company, a subcontractor, made rough steel forgings for a principal contractor, who had agreed to supply the British government with high explosive shells. It put prepared steel rounds through two forging processes, whereby a hole was pierced from one end of each round to within two inches of the other, and the round was then lengthened by drawing it through three successive rings of a hydraulic press. To make the shell form (which weighed about 170 pounds) suitable for use as a shell, the principal contractor, by dressing, boring, and machining, requiring 27 distinct and separate processes, reduced such form to 77 pounds. The Supreme Court adopted the language of the Court of Appeals that—

"It is manifest that, standing alone, the statute neither expresses nor implies any warrant or implication for limiting the broad, inclusive, generic words, 'any part,' to the restricted, specific, qualified term 'any completed part.' "

The Forged Steel Wheel Company, like the Worth Bros. Company, was held to be a manufacturer, although each made but a rough part of a given article. The conclusion reached in those cases was foreshadowed in the following statement made in the Carbon Steel Co. Case, in speaking of the act in question:

"Of course it did not contemplate that 'person manufacturing' should use his own hands. It contemplated the use of other aid and instrumentalities, machinery, servants, and general agents, availing thereby the world's division of labor; but it contemplated, also, the world's division of occupations, and in this comprehensive way contemplated that all of the world's efficiency might be availed of, and, when availed of for profits, the latter could not thereby escape being taxed. And where, indeed, was the hardship of it? The tax was on profits and measured by them."

The conclusion here must be that the plaintiff was a manufacturer, and as such engaged at a profit in the making of parts of fuses.

[3] Article 13 of the regulations of the Commissioner of Internal Revenue, in so far as need be quoted, is as follows:

" 'Any part thereof,' as used in section 301 of this title, is any article *relatively complete* within itself and designed or manufactured for the special purpose of being used as a component part of a completed munition, and which, by reason of some peculiar characteristic, loses its identity as a commercial commodity, and which, without further treatment, cannot be used for any purposes other than that for which it was designed."

It is asserted that the four articles made and delivered by plaintiff under its contract are not "relatively completed" parts. The articles produced by plaintiff, by reason of peculiar characteristics (their form being one of them), lost their identity as a commercial commodity, and, without further treatment, could not be used for any purpose other than that for which they were respectively intended. Each was designed or manufactured for the special purpose of being used as a component part of a completed munition after further progressive treatment. "Rela-

tively" means "in relation or respect to something else." Century Dict. Each of the parts was complete within itself in respect to the raw material out of which it was made, and, as was said in the Worth Bros. Company Case, each of the parts "was rough, it is true, but an advance upon the raw material." They were relatively complete.

The tax for each taxable year is imposed upon the entire net profits actually received or accruing for such year "from the sale or disposition of" the articles, or any part of any of the articles, named in the act. Sections 301, 302, 304. The proviso of section 301 exempts from taxation the net profits received in 1916 which were derived "from the sale and delivery of" the articles enumerated in that section under contracts fully performed prior to January 1, 1916. Section 303 is designed to prevent evasion and fraud on the part of manufacturers coming within the terms of section 301. It declares that, if any such manufacturer during any taxable year or part thereof, by any agreement, arrangement understanding, or otherwise, so "sells or disposes of any such article at less than the fair market price obtainable therefor" as directly or indirectly to benefit himself or any other person interested in his business, or with intent to cause such benefit, the gross amount received or accruing for such period "from the sale or disposition of" such article is to be taken as the amount which would have been received or accrued "from the sale or disposition of such article, if sold at the fair market price."

The plaintiff's contention is that the use of the terms "sale or disposition of," "sale and delivery of," "sells and disposes of," and "fair market price" implies that the articles delivered must be the property of the person taxed; that he must have some title thereto which he can "sell or dispose of"; that the title to the castings, having been at all times in the Recording Company until their delivery to the Canadian Company, the plaintiff never at any time had the sole or even a qualified title to such castings, never received payment from the vendee, and was compensated solely by the Recording Company at a specified rate per pound; and that therefore—

"It cannot be said, even under a tortured construction, that any net profits were received by or accrued to the Brass Company from the sale or disposal of the articles specified in section 301 of the act."

It is conceded that the words "dispose of" are more comprehensive than the word "sell"; but it is urged that the maxim, "noscitur a sociis," as defined in 36 Cyc. 1119, 1120, and First Nat. Bank v. U. S., 206 Fed. 374, 379, 124 C. C. A. 256, 46 L. R. A. (N. S.) 1139 (C. C. A. 8) applies, and that, the word "sell" having a definite meaning of disposal for money, the words "dispose of" mean "a disposal by way of barter, exchange or otherwise" i. e., by "some one of the ingenuous plans that are always brought out to escape the law." To sustain the view advanced several authorities are cited, some of which were distinguished and held inapplicable by both the Appellate and Supreme Courts in the Forged Steel Wheel Co. Case.

[4] The contention made is unsound. A meaning must, if possible, be given to the words "dispose of." Platt v. Union Pac. R. Co., 99 U. S. 48, 58, 25 L. Ed. 424. They do not mean the same as the word

"sell"; selling being but one mode of disposing of property. Hill v. Sumner, 132 U. S. 118, 122, 10 Sup. Ct. 42, 33 L. Ed. 284. Thus to define them is to hold that they are unnecessary, and that Congress used a superfluous term. They mean something more than the word "sell," and must have a distinctive meaning beyond that word. Hill v. Sumner, 132 U. S. 123, 10 Sup. Ct. 42, 33 L. Ed. 284; Platt v. Union Pac. R. Co. supra; Andrew v. Auditor, 5 Ohio N. P. 123. They were intended to embrace every sort of transaction or device other than a sale. They are words of general use and not of legal technicality. Many shades of meaning have been assigned to them. Phelps v. Harris, 101 U. S. 370, 381, 25 L. Ed. 855; Whitfield v. Thompson, 85 Miss. 749, 38 South. 113, 117. That meaning should be given to them, if possible, which will consist with, and not defeat, the object of the act, or lead to injustice to manufacturers. To pass an article over into the control of another, to part with it, to relinquish it, to get rid of it, actually to remove it, is to dispose of it. Webster's Dict.; Herold v. State, 21 Neb. 50, 56, 31 N. W. 258; Koerner v. Wilkinson, 96 Mo. App. 517, 70 S. W. 509; Connelly v. Putnam, 51 Tex. Civ. App. 233, 236, 111 S. W. 164; Re Olsen's Estate, 17 S. D. 1, 94 N. W. 421, 422; Swenson v. Kleinschmidt, 10 Mont. 473, 482, 26 Pac. 198; Guile v. McNanny, 14 Minn. 520 (Gil. 391), 100 Am. Dec. 244; Newcomb v. Newcomb, 12 N. Y. 603, 620; 9 Am. & Eng. Ency. Law, 540; 14 Cyc. 516.

Congress knew that manufacturers in the production of munitions were operating under just such contracts as the plaintiff had, and we have the declaration of the supreme judicial authority that the act in question contemplates the availing of the world's division of labor and occupations and of all the world's efficiency, and that, when availed of for profits, such profits cannot thereby escape being taxed. The definition of the words "dispose of," above given, must, on a fair interpretation of the act, be accepted as correct. The plaintiff delivered the parts made by it, and relinquished and passed its control over them to the Recording Company, and, by thus parting with and getting rid of them, disposed of them.

[5] The proviso in section 301 is an exempting clause within whose terms the instant case does not fall. It is thought, however, by plaintiff, that the words "sale and delivery," found therein, warrant the application of the "noscitur a sociis" maxim. If the meaning to be ascribed to those words is what plaintiff claims, may it not be that the proviso created a distinct and separate class, embracing manufacturers only who, as exclusive owners, held the full title to the articles made by them, and who sold and delivered such articles and received a net profit thereon before January 1, 1916? If so, the words "dispose of," occurring elsewhere in the act, can have no application, except as to such class. It is manifest that the provisions of the act, other than the proviso, are consistent and directly applicable to a case such as plaintiff presents, unless the expression "fair market price," occurring in section 303 and hereafter to be considered, operates to defeat such consistency and application. The conclusion herein reached is preferably based on other and what is believed to be rational grounds. As said in

Williams v. State, 99 Ark. 149, 137 S. W. 927, Ann. Cas. 1913A, 1056, 1057, quoting 2 Lewis' Sutherland Stat. Const. § 368:

"A statute is passed as a whole, and not in parts or sections, and is animated by one general purpose and intent. Consequently, each part or section should be construed in connection with every other part or section, and so as to produce a harmonious whole."

Considering the context of the act in question, the words "sale and delivery" must be read "sale or delivery." Its language elsewhere than in the proviso is "sell or dispose of," or "sale or disposition of." A like situation existed in the statute considered in Geiger v. Kobilka, 26 Wash. 171, 66 Pac. 423, 90 Am. St. Rep. 733. The rule that "and" and "or" are convertible, as the sense may require, applies to their use in statutes (U. S. v. Fisk, 70 U. S. [3 Wall.] 445, 447, 18 L. Ed. 243; Hensel, Bruckmann & Lorbacher v. U. S. [C. C.] 126 Fed. 576; Union Central Life Ins. Co. v. Skipper, 115 Fed. 69, 72, 52 C. C. A. 663 [C. C. A. 8]; Ohio v. Covington, 29 Ohio St. 102, 115; Finckh v. Evers, 25 Ohio St. 82, 85; Seaton v. Grimm, 110 Iowa, 145, 149, 81 N. W. 225), as well as to other instruments (Dumont v. U. S., 98 U. S. 142, 143, 25 L. Ed. 65; Brown v. Grand Rapids Parlor Furniture Co., 58 Fed. 286, 291, 7 C. C. A. 225, 22 L. R. A. 817 [C. C. A. 6]). If Congress had in mind merely a sale, or a disposal by way of barter or exchange, or their equivalent, the words "and delivery" are superfluous, for the reason "delivery" is one of the elements of a sale (City of Iola v. Lederer, 86 Kan. 347, 120 Pac. 354; Commonwealth v. Williams, 72 Mass. [6 Gray] 1, 9); the term "sale," in common parlance, importing a delivery (Hamilton v. Steck [Sup.] 5 N. Y. Supp. 831, 832).

"Delivery" is a word used in various senses and to express various shades of meaning. Benjamin on Sales (5th Ed.) 677; 5 Am. & Eng. Ency. Law (1st Ed.) 520a, note. "Delivery," in its legal sense, may denote a transfer of title to the thing sold, or it may mean a transfer of possession (De Bary v. Souer, 101 Fed. 425, 428, 41 C. C. A. 417 [C. C. A. 5]; Morse v. Sherman, 106 Mass. 430, 433; 35 Cyc. 154), and it is generally used to denote a transfer of possession (Bloyd v. Pollock, 27 W. Va. 75, 128, 129). It means:

"To give or transfer; to yield possession or control of; to part with." Webster's New International Dict. "To put into another's possession or power; pass to another." Century Dict. "Transmit the possession of a thing from one person into the power or possession of another." 13 Cyc. 773, 774.

But according to these definitions "delivery" and "disposition of" must be held to be equivalent terms. The language of the proviso affords no shield to the plaintiff.

[6] Nor is the plaintiff's contention aided by the expression "the fair market price," found in section 303. To prevent avoidance of the tax on manufactured articles and parts of articles mentioned in section 301, Congress established a standard, by comparison with which the fair dealing of the manufacturers might be tested. An article or part of an article owned by a manufacturer, whether his ownership be entire or qualified, has a value. The standard of value set up by the statute is the "fair market value." If the manufacturer, enjoying the full ownership of an article, or a part of it, sold, or, having but a qualified

ownership therein, disposed of, his entire interest for what that interest, whatever it might be, would fairly sell for on the market, he was taxable on the net profits only as the same were determined by section 302. If he sold or disposed of his interest for less than it would thus sell for on the market, his tax was to be computed for the taxable period on the gross amount received or accrued from the sale or disposition of such article or part thereof. Such is the significance of the term "the fair market price" occurring in section 303.

[7] That the Recording Company owned and furnished the raw material out of which plaintiff made parts of fuses is without controlling influence. The plaintiff had a lien for the work it performed, and that lien constituted in plaintiff's behalf a qualified right in and a right of control over whatever property the Recording Company had in the manufactured parts. Advance Thresher Co. v. Beck, 21 N. D. 55, 128 N. W. 315, Ann. Cas. 1913B, at page 519; Rochester Distilling Co. v. O'Brien, 72 Hun, 462, 25 N. Y. Supp. 281; Re Ransford, 194 Fed. 658, 660, 115 C. C. A. 560 (C. C. A. 6). The plaintiff's lien was within itself a right of property (The Lottawanna, 88 U. S. [21 Wall.] 558, 579, 22 L. Ed. 654; The J. E. Rumbell, 148 U. S. 1, 11, 13 Sup. Ct. 498, 37 L. Ed. 345), a proprietary interest, a qualified ownership (Hollingsworth v. Dow, 19 Pick. [Mass.] 228, 230; Hamilton v. Buck, 36 Me. 536, 539; Stewart v. Flowers, 44 Miss. 513, 7 Am. Rep. at page 710); the general ownership being in the Recording Company. The value of the labor expended on the raw materials, plus plaintiff's profits, represented the value of its ownership or interest, which value was measured by the price per pound to be paid by the Recording Company. Plaintiff, by its delivery of the manufactured parts to the Recording Company for a money consideration, disposed of its interest and qualified ownership in them, and thus in the articles themselves, at what has been treated by the parties as the market price for manufacturing, such as plaintiff did.

[8] If the plaintiff is entitled to interest, as it claims, on the penalty imposed on it for the period which elapsed between its payment and its return, it must be in the way of damages. The penalty, when repaid, was accepted without any agreement or reservation that its acceptance should not affect the question of the payment of interest or the right to demand the same. The recovery of interest on the penalty repaid must therefore be denied. N. Y. Trust Co. v. Detroit, T. & I. Ry. Co., 251 Fed. 514, 519, 163 C. C. A. 508 (C. C. A. 6); Tillotson v. Preston, 3 Johns. (N. Y.) 229, cited with approval in Stewart v. Barnes, 153 U. S. 456, 463, 14 Sup. Ct. 849, 38 L. Ed. 781.

It follows, from the foregoing, that judgment must be entered for the defendant.