**COLEY v. PICKERING, Collector of Internal Revenue.**

District Court, S. D. Illinois, S. D. February 21, 1927.

No. 17225.

1. **Internal revenue ⬅➡25—When method of keeping accounts by corporation did not clearly reflect net income, it was required to make return on basis of actual receipts and disbursements (Revenue Act 1916, § 13 [d] being Comp. St. § 6336m).**

Under Revenue Act 1916, § 13 (d) (Comp. St. § 6336m), unless the method of keeping accounts by a corporation clearly reflected its net annual income, it was required to make its return on the basis of actual receipts and disbursements, and the tax was assessable on that basis, regardless of the basis of the return.

2. **Internal revenue ⬅➡7(11)—Proceeds of manufacturer's sales made, but not collected, during tax year, are not taxable income for that year.**

Proceeds of sales by manufacturer, made, but not collected for, during a tax year, are not taxable income for that year.

3. **Internal revenue ⬅➡38(1)—Taxpayer cannot recover interest on penalty exacted, but afterwards refunded and accepted.**

Taxpayer cannot recover interest on the amount of a penalty exacted, but afterwards refunded and accepted.

At Law. Action by W. L. Coley, receiver and trustee in bankruptcy of the Red Bud Shoe Company, against John L. Pickering, Collector of Internal Revenue. Judgment for plaintiff.

Oliver Blackinton, of St. Louis, Mo., for plaintiff.

Walter M. Provine, U. S. Atty., of Springfield, Ill., for defendant.

FITZHENRY, District Judge. This is an action brought by the receiver and trustee in bankruptcy of the estate of the Red Bud Shoe Company, bankrupt, against John L. Pickering, collector of internal revenue for the Eighth revenue district of Illinois, to recover income and excess profit taxes alleged to have been erroneously assessed and collected for the year 1917, in the sum of $13,492.19, together with interest thereon from July 17, 1920, at the rate of 6 per cent. per annum. The cause was submitted to the court without the intervention of a jury.

During the year 1917, and for some years prior, the Red Bud Shoe Company, an Illinois corporation, was engaged in the business of manufacturing and selling shoes at Red Bud, Ill. On March 11, 1918, the corporation was adjudicated a bankrupt in the Eastern district of Illinois. W. L. Coley was appointed receiver of the company February 22, and trustee on March 11, 1918. Under the provisions of an Act of Congress of September 8, 1916, entitled "An act to increase the revenue and for other purposes," as amended (Comp. St. § 6336a et seq.), and an Act approved October 3, 1917, entitled "An act to provide revenue to defray war expenses and for other purposes" (Comp. St. § 6336⅜a et seq.), the corporation, by its president and treasurer, on March 30, 1918, filed with the collector of internal revenue a corporation income tax return for the calendar year 1917, showing a gross income of $104,361.05, total deductions, $102,830.12, and a net income of $1,530.93. The tax shown to be due, $91.86, was paid on June 24, 1918, by the receiver. The return contained a statement to the effect that it was made on the basis of actual receipts and disbursements.

The Commissioner of Internal Revenue directed an investigation of the books and records of the corporation in May, 1918, with a view to determining the correct tax liability of the company for the calendar year 1917. Two revenue agents made an investigation, and a third made a special investigation in the case under date of February 10, 1922. The two revenue agents determined that the basis upon which the company kept its books reflected clearly the company's true gross and net incomes for the calendar year, 1917, and consequently prepared an amended income tax return, showing a gross income of $109,067.96, deductions of $93,099.03, and a net profit of $15,969.93. As a result of the investigation so made, an additional income tax of $491.19 and an excess profit tax of $6,251.37 were assessed against the company in the month of June, 1918, together with 100 per cent. penalty added to the entire income tax assessment of $583.05, and a 50 per cent. penalty added to the excess profits tax of $3,125.69, or a total tax and penalty of $10,451.30.

The tax not having been paid upon demand, there was added to this item certain penalties and interest in the sum of $3,040.89, and the total of the two amounts, namely, $13,492.19, was paid under protest, July 22, 1920, by the plaintiff to the defendant. In April, 1923, the Commissioner of Internal Revenue refunded to plaintiff the amount of the 100 per cent. and the 50 per cent. penalties, shown above, or the sum of $3,708.74, leaving a balance claimed by the plaintiff of $9,783.45, with interest on the same at 6 per cent. per annum from July 17, 1920, to Au-

gust 1, 1924, together with interest on the sum of $3,708.74, previously refunded, at 6 per cent. per annum from July 17, 1920, to April 28, 1923, less an item of $221.78—additional tax, $162.16, plus interest, $59.62—alleged by plaintiff to be due the government in addition to the original tax of $91.86.

Plaintiff contends that the total merchandise sales, less discounts, made by the Red Bud Shoe Company in the calendar year 1917, as shown by the books, amounted to $109,461.28 ($393.32 in excess of the gross income determined by the revenue agents). Plaintiff also contends that the sum should be reduced by several items, aggregating $15,062.43, because these items were not received nor receivable in the calendar year 1917. Plaintiff also contends that the books show items aggregating $93,109.34 deductible from the gross income (a sum of $10.31 in excess of that shown by the revenue agents); also that of the amount of $98,109.54 there was unpaid within the calendar year 1917 items in the total amount of $2,944.10, and that the figure $93,109.34 should be reduced by that amount, and, taking into consideration this adjustment, the taxable net income of the company would be $4,233.61.

The items making up the $15,062.43, the amount which plaintiff wishes to have the gross income, as shown by the books, reduced, are as follows:

1. Merchandise sold to Clark Leather Company December 31, 1917.. $8,446.85
2. Iroquois Coal Mining Company.. 138.00
3. Schuette Bros. ................ 2.00
4. D. Weller .................... 65.40
5. Mobile & Ohio Railroad Company.. 98.70
6. Merchandise sold in 1917 and paid in 1918 .................... 6,299.48

Item 1 was a conditional sale, subject to acceptance by the purchaser. The shipment which was made the last day of the year, was afterward only partially accepted; the remainder of the goods being returned. The price for those goods which were accepted was paid to the receiver.

Items 2, 3, and 4 represent alleged shipments, the receipt of which was denied by the purchasers, and the receiver was never able to trace nor to collect for them.

Item 5 represents a claim for merchandise lost in transit, which was never collected by the company.

Item 6 represents amounts received by the company in 1918 for sales of merchandise shipped in 1917, but payable in 1918. All of the items are absolute sales or conditional sales made in the year 1917, which were paid for, if at all, in 1918.

The items making up the figure $2,944.10, the amount which the plaintiff admits should be subtracted from total deductions, as shown by the books, are as follows: Findings, auto, bottom stock, repairs, light and power, miscellaneous factory expenses, office expense, and upper leather, all of which were incurred in 1917, but not paid, if paid at all, until 1918. In the stipulation of facts agreed upon in this case it is stated:

"The report and audit made by Mr. Buckingham employed by Mr. Muderig, the manager of the company, with the close of the year 1917, covering the period beginning December 7, 1916, and ending December 30, 1917, and the audit made by Mr. Jackson, representing the Internal Revenue Department, made in May, 1918, were taken from the books, and they substantially agree and they do clearly reflect what the books show."

It was contended on behalf of the government that the Red Bud Shoe Company, in keeping its books and accounts during the year 1917, accrued and set up on its books its gross income and business expenses; that deductions were taken in the year 1917, representing such expense, regardless of whether they were paid in the year 1917 or in subsequent years; that plaintiff's contention in seeking to obtain the deductions of $15,062.43 and $2,944.19 from gross income and total deductions, as shown by the books, respectively, show conclusively that the books of the Red Bud Shoe Company were kept on an accrual basis, and that therefore the plaintiff cannot now be heard to claim that it made its return on the cash receipts and disbursements basis, and should not be permitted to recover.

The issues involved in this case are:

(1) Did the Red Bud Shoe Company keep its books of account on an accrual basis, and, if so, was it compelled, under section 13 (d) of the Revenue Act of September 8, 1916, as amended in 1917, and the regulations of the bureau, to make out a return computing its taxable net income for the calendar year 1917, the gross income and deductions as shown by its books by those items of gross income and business expenses, or any part of the same, accrued and set up in its books in 1917, but alleged to have been received or paid in 1918, if received at all? And,

(2) By the acceptance of the return of the penalty collected by the Commissioner in the sum of $3,708.74 is plaintiff precluded from suing for interest on said sum?

[1] It must be borne in mind that, under former revenue laws, for several years, the

Red Bud Shoe Company had made its returns upon the actual receipts and disbursements basis, and the return here involved contains the statement that it was made on the basis of actual receipts and disbursements. Indeed, that was the only basis under the revenue laws existing prior to the act of 1916 upon which a taxpayer might make his return. When the Revenue Act of September 8, 1916, was pending as a bill in the Sixty-Fourth Congress, the committee report upon the bill explained the proposed change in existing law in these words:

"The present law requires that the income tax shall be levied on the accrued basis. As two systems of bookkeeping are in use in the United States, one based on the cash or receipts basis and the other on the accrual basis, it was deemed advisable to provide in the proposed measure that an individual or corporation *may* make return of income on either the cash or accrued basis, if the basis selected clearly reflects the income."

In harmony with this view of the committee, the bill contained a new paragraph, being paragraph d, section 13, Act of September 8, 1916 (section 6336m, U. S. Comp. Stat. 1916), which is as follows:

"A corporation, * * * keeping accounts upon any basis other than that of actual receipts and disbursements, unless such other basis does not clearly reflect its income, *may*, subject to regulations made by the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, make its return upon the basis upon which its accounts are kept, in which case the tax shall be computed upon its income as so returned."

This provision was an innovation in income tax law, and was re-enacted in the amendment of October 3, 1917. The income tax law levies a tax to be paid annually "upon the entire net income received in the preceding calendar year from all sources by every individual. * * * corporate or otherwise." The tax levied by the statute is extended upon the return of the taxpayer, and by section 13 (d) the taxpayer is required to file with the collector his return. If the corporation keeps its accounts upon any basis other than that of actual receipts and disbursements, unless such other basis does not clearly reflect its income, it "may," subject to regulations, make its return upon the basis upon which its accounts are kept. In which case the tax shall be computed upon its income so returned.

A reading of the statute and consulting the report of the committee which recommended the bill to the House of Representatives when the proposed law was pending for consideration is persuasive that it was the purpose of Congress to provide the new method for making returns for the accommodation of the taxpayer. If the other basis of keeping accounts did not clearly reflect the corporation's income, then it was the duty of the taxpayer to report his income upon the actual receipts and disbursements basis.

In this record we find no evidence that it was ever contended on behalf of the Red Bud Shoe Company that its method of keeping its books was strictly upon an accrual basis, or that the books themselves correctly show the true net income for the year 1917. It may be true that there were some items which might be interpreted as of an accrual nature upon the books, but in the view we take of the statute (section 13d), unless the method of keeping accounts clearly shows the net annual income, then the burden was cast upon the taxpayer to make out his return upon the actual receipts and disbursements basis, and there is no controversy in the evidence in this case but that that was exactly what the taxpayer was endeavoring to do. Had it been otherwise, that is, had the taxpayer contended that the books were kept upon an accrual basis, and an attempt was made to execute a return upon that basis, then the objections of the government might be sustained.

[2] So far as the six items mentioned in the statement of this memorandum are concerned, as to whether they should be allowed or rejected as deductions, it may well be said as to most of them that they should have been allowed, regardless of whether the return was made upon the accrual or actual receipts and disbursements basis.

Plaintiff seeks an allowance upon deductions for the Clark Leather Company account of $8,447.85. This account was a memorandum of a sale by the taxpayer, made on the last day of the year, the date the goods were shipped to the purchaser. This sale was purely conditional, and did not become effective, under the evidence, until the goods were inspected and accepted by the consignee. When so inspected, a very substantial portion of the shipment was rejected, and some accepted.

The Iroquois Coal Mining Company, Schuette Bros. and Weller accounts, aggregating $205.40, were for goods which, if shipped, were lost, and no recovery had of any kind. The Mobile & Ohio Railroad Com-

pany account was a claim of the taxpayer for $98.70 for lost freight, which was never recognized by the railroad company, and never became liquidated. The last item of $6,299.48, was for sales made in 1917 and payable in 1918. Collections were made by the manager and receiver in bankruptcy and accounted for in the return of 1918. The Clark Leather Company account amounted to an offer on the part of the Red Bud Shoe Company and a tender of the goods. The three small claims are rather meager, so far as the record is concerned. It does not show that the goods were ever shipped, but, if shipped, were lost. At least their receipt was denied by the consignee.

As to these items, particularly that of the Clark Leather Company, if the taxpayer had been reporting upon the accrual basis, would these items have accrued within the meaning of the law? In other words, had each of these items become "a present and enforceable right or demand"? In discussing this subject, Mr. Holmes, in the Sixth edition of his Federal Income Tax, p. 1248, says:

"Income derived from manufacture and sale involves three stages: (1) The gradual creation of income through the process of manufacture and sale; (2) the crystallization of the income by the exchange of goods for a debt; and (3) the final receipt of cash. Likewise, conversely, as to expenditures, there are three stages: (1) The gradual creation of a potential liability by the earning of the income, (2) the crystallization of the liability into a due and enforceable demand; and (3) the final payment of cash. * * * It is clear that the third stage in these processes is immaterial to the accrual of income or charges; indeed, it represents precisely the dividing line between the cash and accrual basis. It is equally clear that no income may be said to accrue during the first stage. It is necessary to manufacture goods; it is also necessary to sell them. It is true, of course, that no income will be produced, unless collection is made; but the small percentage of incollectible bad accounts in the average business., and the extensive use of credit in modern business, prove an almost universal trade practice and procedure."

As to the Clark Leather Company, that transaction had never reached the second stage referred to by Mr. Holmes; that is, there never had been an exchange of the goods for a debt. As to the small items above referred to, aggregating $205.40, for which deduction credit is claimed, they seem to represent nothing except orders for certain goods which were never filled. As to the claim of the Mobile & Ohio Railroad Company for lost freight, this account clearly amounted to nothing more than a memorandum of the taxpayer that he was claiming that much damages by reason of the loss of freight. Accounts of this character come clearly within the rule announced by Mr. Holmes in his Federal Income Tax, 1257:

"Where an item is in dispute, and there is no assurance that it will be paid, it should not be reported as income until there is an adjudication that it is due, or a settlement of the dispute"—citing Sol. Op. 41, T. B. 34–20, 1159, C. B. 30164; O. D. 642, T. B. 34–20, 1151, C. B. 3–231; I. T. 1471, T. B. 1–42–549, C. B. 1–2 P. 67.

All of the enumerated accounts above referred to might well have been covered into a "suspense" account and properly deducted, where the taxpayer was reporting upon an accrual basis; but a mere failure to do so, ought not to be permitted, in action of this character, to mitigate against the substantial rights of the parties. None of these accounts—that is, 1 to 5 inclusive—were, strictly speaking, receivable, because no agreement fixing the amount due existed.

The government strenuously insists that that portion of the stipulation which recites that the audit of Mr. Buckingham and the audit of Mr. Jackson, the revenue agent, were taken from the books and substantially agree "that they do clearly reflect what the books show." The bankrupt was a small manufacturing concern, and the agreement recited in the stipulation may be true, and yet the books themselves not show the true income. The mere fact that a large shipment of shoes was made on the last day of the year and charged to the account of the consignee, when the title to the shoes was not to pass until after inspection and acceptance, should not be used to show an income for the year in which they were shipped, in the light of the fact that title should not pass until there was an acceptance of the tendered sale by the purchaser, and did not pass during the taxing period in question. The substantial part of the deductions sought from the gross income being made up of items which well might be said would never become liquidated, it was unjust to deny the taxpayer the right to their deduction from the gross income, as shown by the report.

As to the sixth item sought to be applied as a deduction from the gross income, to wit, merchandise sold in 1917, and paid for in 1918, $6,299.48. The merits of plaintiff's contentions depend entirely upon whether or not the return was being made upon the ac-

tual receipts and disbursements or accrual basis. If the return is ascertained upon the accrual basis, then the contention of the Government would be correct. However, it is admitted in the record that the return for the year 1917 contained a statement to the effect that it was made on the basis of actual receipts and disbursements. In reporting upon the latter basis, then, the deductions sought should have been allowed.

[3] The next question: Does the acceptance by plaintiff of the penalty in the amount of $3,708.74 preclude him from recovering interest on said sum? There can be no question from this record but that the penalties referred to, and which the Commissioner did refund, were those aggregating the sum of $3,040.89, added for the reason that in the month of June, 1918, the tax and penalties already extended against the taxpayer were not paid on demand. In April, 1923, this tax was returned, together with an overplus, as the amount of the penalties referred to was $3,040.89, while the amount refunded was $3,708.74, evidently including such interest as the penalty collected in 1920 earned during the time it was in the hands of the government. Plaintiff contends that this payment by the government of $3,708.74 should be considered as applying upon the general account. We do not so find. The penalty was refunded and, with the acceptance of the payment from the government in that regard, any additional right to interest, not taken into consideration in the fixing of the amount returned upon the penalty, cannot now be awarded. If there were any other damages sustained by plaintiff, by reason of the collection of the penalties referred to, they were incidental to the debt itself, and, having accepted the principal, any undisposed of incidental right was thereby waived. Stewart v. Barnes, 153 U. S. 456, 14 S. Ct. 849, 38 L. Ed. 781; Dayton Brass Castings Co. v. Gilligan, Collector (D. C.) 267 F. 872-880.

In conclusion, the court finds:

(1) That the Red Bud Shoe Company, through its proper officers, executed an income tax return for the year 1917, and in doing so attempted in good faith to make a return upon the actual receipts and disbursements basis.

(2) That in doing so it had a right to deduct from its gross income certain items of constitutional sales and attempted sales, which had never matured to the extent of becoming fixed liquidated demands owned by the corporation.

(3) That, having attempted to make a return upon the actual receipts and disbursements basis, it had a right to deductions for sales made in 1917, to be paid in 1918, and to report such receipts in its tax return for the year 1918.

(4) The court further finds the issues for the plaintiff, except as to that part of plaintiff's claim wherein it is sought to recover interest upon the penalty collected in 1920, and returned by the Commissioner to the tax payer in 1923; that, having accepted the return of the principal (penalty), any claim to interest, not satisfied by the return payment, was thereby waived.