## HUNT et al. v. DALLAS TRUST & SAVINGS BANK et al. (No. 8582.)*

(Court of Civil Appeals of Texas. Dallas. Dec. 3, 1921. Rehearing Denied Feb. 18, 1922.)

1. Wills ⊜⇒470—Intent of testator to be ascertained from entire instrument.

In construing a will, the court is to search for the testator's intent as reflected in the entire instrument and give it effect.

2. Wills ⊜⇒612(3)—Husband held to take absolute fee in personalty.

Under a will, "I devise and bequeath to my husband all personal property owned by me at my death,", held, that husband took absolute title to the testator's personal property, although another clause of the will provided that executor should have "absolute control and right to dispose and management of my estate during the lifetime of my husband."

3. Wills ⊜⇒672(3)—Clause held to create a trust, and not mere agency; "dispose."

Clause in will giving executor "absolute control and right to dispose and management of my estate during the lifetime of my husband and in furtherance of this desire I devise and bequeath" to it "all my real property to be held in trust for the purpose of carrying out the terms of this will," held to create a trust with power of sale, and not a mere agency, though husband in a prior clause was given a life estate in the land; the word "dispose" being synonymous with expression "to alienate by sale."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Dispose of.]

4. Wills ⊜⇒671—Technical words not essential to creation of trust.

The use of technical words in a will is not essential to the creation of a trust, and the failure to use them does not defeat the trust, where the intention to create it is definitely fixed or clearly expressed by inference.

Appeal from District Court, Dallas County; E. B. Muse, Judge.

Suit by the Dallas Trust & Savings Bank against Grafton S. Hunt and others to obtain construction of a will. From a decree, defendant Hunt and others appeal. Affirmed.

Thompson, Knight, Baker & Harris and P. D. Crawford, all of Dallas, for appellants.

Seay, Seay, Malone & Lipscomb and Cockrell, Gray, McBride & O'Donnell, all of Dallas, for appellees.

---

HAMILTON, J. This suit was brought by Dallas Trust & Savings Bank for the purpose of obtaining a construction of the will of Mrs. Irene Hunt Springfield, who, when she died, left her will in the following language:

"1. I desire and elect that all my just debts be paid out of my estate without delay by my executor hereinafter named.

"2. I devise and bequeath to my husband, Wells Lancaster Springfield, the sum of $25,000 to be paid to him out of my separate estate.

"3. I devise and bequeath to my husband all personal property owned by me at my death.

"4. I devise and bequeath to my husband a life estate in all real property owned by me at my death, the $25,000 bequest set forth in No. 2 above having been first deducted.

"5. In case my husband shall not survive me and at his death it is my desire that all property owned by me at my death shall be distributed in the following manner:

"(a) I devise and bequeath to my sister, Mrs. Estelle Hunt Plowman, a one-third interest in and to all my property, both real and personal.

"(b) I devise and bequeath unto my brother, Grafton S. Hunt, a one-third interest in and to all my property, both real and personal.

"(c) The remaining one-third I desire to be distributed as follows:

"(1) I desire that my executor hereinafter named shall pay the sum of $5,000 to my brother, Zimri Hunt.

"(2) I desire that the remaining portion of this one-third interest, above referred to, shall be distributed equally between Grafton Wortham Hunt and Zimri Hunt, Jr., children of my brother, Zimri Hunt.

"(3) In the event my husband does not survive me and my property shall descend to the parties named in paragraph 5 (a), (b) and (c), above set forth, it is my desire that the Dallas Trust and Savings Bank of Dallas, Texas, hereinafter appointed my executor shall have the absolute management and control of the property herein bequeathed to the two sons of my brother, Zimri Hunt, named in (c) (2) above, with power to dispose, invest, control and manage same until both Grafton Wortham Hunt and Zimri Hunt, Jr., shall have attained the age of thirty years, at which date the said Dallas Trust and Savings Bank shall deliver unto them the property herein bequeathed.

"6. My property consists of my separate property and a one-half interest in the community estate of my husband, Wells Lancaster Springfield, and myself, consisting mainly of real estate, located in the City and County of Dallas, and State of Texas.

"7. It is my desire that in case I die before my husband that the execution of the terms of this will shall be placed in the hands and management of the Dallas Trust and Savings Bank of Dallas, Texas, which said bank shall have absolute control and right to dispose and management of my estate during the lifetime of my husband and in furtherance of this desire I devise and bequeath unto the said Dallas Trust and Savings Bank of Dallas, Texas, all my real property to be held by it in trust for the purpose of carrying out the terms of this will.

"8. I hereby constitute and appoint the Dallas Trust and Savings Bank executor of this my last will and testament and direct that no bond or security be required of it as such executor. It is my wish that no further action shall be had in the courts of this State in the administration of my estate than to approve and record this will and to return an inventory and appraisement of my estate and list of claims."

After the will had been duly probated and the Dallas Trust & Savings Bank had qualified as independent executor, a portion of the land was sold for the purpose of complying with the second clause of the will, and, out of the proceeds of the sale, the $25,000 bequeathed to Mr. Springfield was paid in full. The trial court to which the case was submitted by its decree adjudged that the will authorized the bank to sell the unsold land at its discretion, from which decree appellants have appealed.

The clause of the will of primary concern in this suit, and the legal significance and effect thereof in its relation to other portions of the will, is clause No. 7. The controversy revolves around the respective conflicting conclusions of appellants and appellees as to the powers, rights, and duties the testatrix intended by this clause to confer upon the bank. It is contended on behalf of appellants, who are all the remaindermen to whom the entire estate is to pass in fee upon the termination of the life estate, that clause 7 passes no title or estate to the bank which would survive its tenure as executor, and that, if clause 7 means anything at all, it is that, when the bank's duties as executor are discharged, then its maxium possible relationship to the estate will be one of agency with limited powers, and that this relationship will not arise until its duties as executor are ended.

Appellants having concluded that the powers conferred by clause 7 of the will do not go beyond the limited powers of agency, they advance the proposition that such powers cannot be exercised to destroy the purposes of the testatrix reflected in other portions of the will, which purposes forbid the conferring upon the bank, by the terms of clause 7, of the qualities of a trustee, or the right and authority to convert the real estate for purposes of investment over the objection of the owners of the fee title in remainder; and it is contended that, under the rules of law and the terms of the will, the estates in remainder immediately vested in the beneficiaries to whom they were given, upon the probating of the will, as of date of Mrs. Springfield's death, although the beneficial enjoyment was deferred until the expiration of the life estate given to the testatrix's husband. The position is advanced throughout appellants' argument that the intention stands out from the will that Mrs. Springfield desired her husband to take a life es-

tate in her real estate, and her other devisees to take estates in remainder in real estate, and that, if the bank is held to have the power and authority under 'the terms of clause 7 to convert the land into other forms of assets in pursuit of its own unrestrained inclination, the declared intention of the will will be defeated, so that the privilege of enjoying the advantages of ownership of the land as intended will be defeated and destroyed.

On the other hand, appellants say that, if clause 7 of the will is construed in conformity with their view, it will be held to be "a reservoir in which are to be found stored certain powers of the trust company as executor, as well as certain powers of it as agent," so that the intention of the will reflected in other .portions of it will be given effect, and the land itself thus will be passed to the heirs of the testatrix. Appellants say that the powers of the bank reflected in clause 7 are subordinate to the dispositions and inseparably joined with the scheme of the will elsewhere contained in its provisions. They give it the following application: They say that the provision for the payment of the testatrix's debts out of her estate is to be carried out through the right of control, management, and disposal given in clause 7; that the provision for the payment of the $25,000 to Mr. Springfield out of testatrix's separate estate is to be carried out under the terms of clause 7, because it was necessary to sell a portion of her land in order to acquire the cash with which to make this payment; that the provision of the will by which her personal property was given to her husband (at least for his lifetime, though in other portions of the will gifts over to the other distributees are made) relates to clause 7, and that the use of the bank in carrying out this stipulation would be in accord with such gift; that under certain contingencies (which never arose) the powers given the bank in clause 7 might be exercised to hold, manage, and invest the interest of the minors as provided for in section 3 of the will; that the powers given in clause 7 were appropriate to the purposes of the will in carrying out the terms of it relating to the payment of community debts and separating the testatrix's community property from that of her husband, so as to pass her· portion thereof in conformity with the respective devises.

In opposition to the views and arguments of appellants, the appellees, Dallas Trust & Savings Bank and Wells Lancaster Springfield, the surviving husband of the testatrix, to whom a life estate was given, -contend that the words of the will, the different relations of the parties to the testatrix, and the character of the property devised, all taken together, make it apparent that Mrs. Springfield intended that portions of her real estate should be converted into personal property, and that clause 7 of the will was intended to clothe the bank with the power and authority to work transmutations of the property through such sales as in the judgment of the bank it might be advisable to make. They urge that, unless clause 7 is given this meaning, the purpose reflected in other portions of the will to give Mr. Springfield a life estate in all the property would be defeated, and that the gift to him would be no more than a mere naked gift, because the real property produces no revenue beyond the amounts required for the payment of taxes, upkeep, etc., leaving no income therefrom to be enjoyed by Mr. Springfield.

[1] The paramount undertaking the construction of a will imposes is to search for the testator's intent as reflected in the entire instrument, so that it may be given that effect, to be derived from all of its provisions in their relation to each other, which will reflect the purposes and desires the testator sought to express by it. Applying this principle to Mrs. Springfield's will, the question for our determination is: What power and authority did she intend to confer upon the bank by the language of clause 7 in its relation to all expressions comprised in the other clauses of the will? What intention and extent of power may be derived from it, without coming into conflict with expressions of intention and desire embodied in preceding portions of the will?

[2] We do not believe that the provisions of clause 7 can fairly be said to have been intended to serve the purposes suggested by appellant. The power and the duty inheres in the bank as independent executor to pay the debts of the estate, and hence the purposes of clause 7 are wholly irrelevant to the clause of the will which provides for the payment of debts. Moreover, that item of the will expressly declares that the bank shall act as executor in paying the debts. The provision for the payment of the $25,000 to Mr. Springfield out of Mrs. Springfield's separate estate is not dependent upon any special grant of power or authority for its execution, because, although the separate estate consists of lands, the implied power exists in the executor, as such, to make a sale of whatever lands it might be necessary to sell in order to effectuate this provision of the will. It was its duty as executor· to· sell whatever land might be necessary in order to realize the cash with which to carry out this clause of the will. Hence, to say that the powers given in clause 7 were given for the purpose of carrying out this item of the will would be to say that in this respect clause 7 adds no meaning whatever to the will, and might be entirely eliminated. We do not think it can be said that it was nec-- essary to make the bank a special agency, and clothe it with specific powers to carry

out the provisions of the will relating to the gift of the personal property. Clause 3 of the will must, we think, be held clearly and unconditionally to bequeath all the personal property in absolute title to Mr. Springfield. When the will was probated, his unlimited ownership of this property became fixed as of the date of the death. The will bequeathes to the remaindermen no personal property owned by Mrs. Springfield when she died.

Clause 7 of the will in no event could be made to have any application or relation whatever to the control and management of the estate of the minors as provided for in subdivision (3) of clause 5 of the will. We think appellants' suggestion to this effect is clearly wrong. Said subdivision (3) was to become operative only in the event Wells Lancaster Springfield should predecease Mrs. Springfield. The exercise of the powers therein given the bank was made dependent absolutely upon the contingency that Mrs. Springfield's husband should not survive her. Since he did survive her, the event upon which Mrs. Springfield intended the powers and duties given the bank in this portion of the will should depend did not happen, and hence the bank, it seems to us, is excluded from doing any of the things, as trustee, provided for in subdivision (3) of clause 5. On the other hand, whatever authority, right, or duty is given the bank in clause 7 of the will is given only in the event that Mrs. Springfield should die before her husband's death. The functions of the bank in relation to the estate delineated in this paragraph were to be exercised only in the event the executrix's death should precede that of her husband.

A marked contrast thus exists between the contingencies upon which the action of the bank depends under subdivision (3) of clause 5 and under clause 7. Since Mrs. Springfield's husband survived her, subdivision (3) of clause 5, by its own terms, is rendered inoperative, and, if Mrs. Springfield had survived her husband, clause 7 by its own terms would have been inoperative. Nor do we agree that the powers given in clause 7 conferred any added authority appropriate to the paying of community debts and the division of community property as suggested by appellant. Whatever might be necessary to the accomplishment of these details in carrying out the purposes of the will under which they might arise could be done by the bank as executor, and its powers as executor are fully commensurate with any such possible requirement. We are therefore of the opinion that all of the suggested relations of clause 7 to the various purposes of the will advanced by appellants, as above set out, in fact have no real existence, and that to give clause 7 the effect sought to be given it by appellants, as above indicated, would render it entirely superfluous and without any application, beyond the rights and powers and duties of the bank as executor comprised in the eighth clause of the will.

[3] We do not share appellants' view that the bank is nowhere in the will legally constituted a trustee. It seems to us that the language of paragraph 7 indicates that such a right and interest in and power over the real estate is conveyed to the bank as can be said to constitute a trust and to clothe the bank with the authority to act as trustee. We believe the devise in clause 7, by which all the land is conveyed to the Dallas Trust & Savings Bank, coupled with the language of that clause, to the effect that the bank "shall have absolute control and right to dispose and management of my real estate during the lifetime of my husband," is more than a naked grant of power or the creation of an agent, and is sufficient to constitute a trust. McMurry v. Stanley, 69 Tex. 227, 6 S. W. 412; Paige on Wills, 705 et seq.; Jarman on Wills, vol. 1 (6th Am. Ed.) p. 383 et seq.; Underhill on the Law of Wills, vol. 2, p. 1111; Beach on Trusts and Trustees, vol. 1, p. 5.

[4] However, we have encountered difficulty in our effort to determine whether or not a trust is made by the will, and, if so, the nature of it. The use of technical words is not essential to the creation of a trust, and the failure to use them does not defeat the trust, where the intention to create it is fairly expressed or clearly appears by inference.

"If the entire will shows clearly that it was the intention of the testator to create a trust, that intention cannot be defeated by the application of any mere rule of construction, if the trust be lawful and the subject and object of it be, in a legal sense, certain." McMurry v. Stanley, supra.

The seventh clause of the will, manifestly, is not by any means clear, and, the more we have considered it, the more the obscurity in which it, as well as some other portions of the will, is involved, has been impressed upon us; but we have concluded that the language contained in this clause fairly can be said to constitute a trust, or, if not precisely a trust, then what is sometimes denominated a mixture of trust and power, which would be the same, so far as the question here is concerned.

It appears from the record that the real estate disposed of by the will was not producing any revenue beyond the expenses of the upkeep at the time of Mrs. Springfield's death, that it has not produced any net revenue since her death, and that it probably will not yield any net income in the future. This being so, to leave all the land unconverted, it seems to us, would result in the effect suggested by appellees with reference

to the gift made to Mr. Springfield; that is to say, it would render the gift to him a naked one, and he would receive no income whatever from it, but, on the contrary, he would be deprived of all enjoyment of the life estate, in order that the unearned increment might go to the remaindermen at his death. The circumstances and relations of the parties are such, we think, as to preclude the idea that Mrs. Springfield intended by the language of the will to convey an entirely unproductive and valueless life estate to her husband, and, while clothing him with such estate, deprive him of the enjoyment of it, for the exclusive benefit of her collateral kin, to whom she devised the title in remainder upon the termination of the life estate bequeathed to her husband.

As suggested by counsel for appellees, the language of clause 7 of the will, taken in connection with devises and bequests of both real and personal property repeatedly made in other parts, strongly suggests that the testatrix had in mind the expectation that the bank, as trustee, would convert at least a portion of the land into personal property. As stated by the third clause of the will, all the personal property owned by Mrs. Springfield at the time of her death was given absolutely to her husband. Under the provisions of the fourth clause of the will, all the revenue from the entire real estate, if any, in excess of such as might be required for the maintenance of the property, would belong to the husband. So the inquiry naturally suggests itself: Why should she devise personal property to the remaindermen, when, under the terms of the will, they were precluded from receiving any personal property, except such as might accrue from the sale of land? The will deprived them of all right to any existing at Mrs. Springfield's death; no source was provided from which any could come into existence for them, except from the sale of land; and no power of sale under the will existed in any person, unless such power was reposed in the bank as trustee by the terms of clause 7. The incidental power to sell as executor could not be exercised independently beyond the requirements of paying debts and specific legacies.

Appellants lay down numerous definitions of the word "dispose," which definitions are quoted from a leading English dictionary, and cogently urge that Mrs. Springfield cannot be said to have used the word in any of the senses, except one consistent with her evident purpose to pass lands themselves to her collateral kin as well as to her husband. In the first place, we do not agree with appellants that the will evidences a purpose to convey land, and only land, to the remaindermen. Furthermore, we think the word "dispose," as used by Mrs. Springfield in the seventh clause of the will, is synonymous with the expression "to alienate by sale."

237 S.W.—39

This, we think, can be said to be the most usual meaning of the expression "dispose," when used in connection with property. Accordingly we construe the will to the effect that it authorizes the Dallas Bank & Trust Company to make sale of the unsold lands belonging to the estate. We think the provisions of clause 7 confer this authority, and to construe that clause to that effect is not to bring it into conflict with the purposes set forth in other portions of the will, or to defeat the intention of the testatrix.

Appellants cite many authorities in support of the position taken by their counsel in construing the will; but we do not construe those cases to constitute controlling precedent or analogy, governing the effect to be given the words of the will under consideration. It is an easy matter to state the principle by which we are to be controlled in construing wills, but it is difficult to apply the principle by analogy of other cases, for the reason that the intentions of testators, as well as the modes of expressing them, are as various and different as wills are numerous; and, since each will is to be given the effect the language of the testator and the circumstances and surroundings under which he made the will indicate, the task of construing a particular will requires that there be drawn from the language in it, and from the circumstances surrounding the testator, the meaning he intended by the particular instrument. In the instant case this can be done most nearly accurately, we think, by giving to all the terms of the will the understanding which they convey in their ordinary acceptation, and looking to the situation in which the will was made and the respective relations of the parties to the testatrix.

The cases construing provisions of wills similar, in a generic way, to those under consideration, nearly all turn on minute distinctions peculiar to the particular instrument resolved; so that whatever conclusion may have been drawn by a court from the expressions contained in any will which has undergone judicial construction is likely to be unrelated under the facts to the construction of the particular will under consideration to the same extent as the language of such will, as a whole, is different from that of wills already construed, and to the extent that the situations of the respective testators are different with reference to the entire setting, including the respective relations of the devisees to the testator.

Believing that the decree of the trial court expresses a correct interpretation of Mrs. Springfield's intention, the judgment will be affirmed.

Affirmed.

## On Motion for Rehearing.

Appellants have filed a motion for rehearing, which is supported by a most thorough

and challenging argument against the construction and effect given the will by this court.

The obscurity of language in which portions of the will are clothed is well calculated to leave in any mind, which has labored to ascertain and interpret the intention attempted to be declared, some doubt as to the precise meaning it was designed and framed to convey. In such situation the able argument which accompanies the motion for rehearing demonstrates with force that different conclusions as to the effect of the will as a whole may be derived from its contents, and logically defended as sound and correct. However, after a most careful consideration of the motion for rehearing, in the light of the accompanying persuasive argument, we still do not believe we ought to recede from the position assumed and expressed in our original opinion. We think our opinion most probably gives the effect the testatrix intended should flow from her will.

In the first place, appellants insist that we have misapprehended the purpose of clause 7 of the will, because they say that this clause explicitly confers the power of sale upon the executor to sell land only for the payment of debts and legacies. The logic of this position is rested upon the proposition that, while an independent executor possesses the power to do these things incident to his office, yet the presumption with reference to title conveyed under a will containing an express provision of sale for such purposes is in favor of the purchaser; whereas, in the absence of an express power of sale, the burden is upon the purchaser to show the existence of conditions to justify the sale when it is questioned in a judicial proceeding.

This argument takes no account of the vital condition that clause 7 is to be operative only in the event Wells Springfield should survive Mrs. Springfield. If she survived him, then clause 7 by its own explicit terms was to be given no effect. Accordingly, if the contention made by appellant should be sustained we would have Mrs. Springfield saying by her will that she desired an express power of sale to be conferred upon the executor for the purpose of paying legacies and debts in the event her husband survived her, but that in the other contingency such power was not to be expressly granted. Certainly she could have validly made such provision. She could have said the bank should possess the power of sale for the purpose of paying debts and legacies, in the event her husband should survive her, without expressly granting such power in the event he should predecease her, and, if she had so declared, then there would be no alternative with reference to recognizing such provision. But the language used by her, we think, does not have such effect, and to give it a construction resulting in such effect, it seems to us, would be to subvert the terms of the will for the purpose of reading into the instrument an intention which is both improbable and unreasonable.

Of course, at the time she made the will it was just as uncertain that Wells Springfield would survive her as that she would survive him. Yet, while this element of uncertainty existed, and was to be considered with reference to the one or the other of them surviving, she made no provision for such presumption in favor of sales in one of the events, while she did in the other, under appellants' theory, notwithstanding the fact that the one as likely as the other should happen. If she desired by her will to insert the provision clothing the bank with the power of sale in the event Wells Springfield should survive her, in order to make sure of better sales than could be effected without such express provisions, because of the presumption that would exist in the purchaser's favor in case of a contest, then is it reasonable that she would have omitted to safeguard such sale with the same provision in the event she should survive Mr. Springfield? The very fact that clause 7 clothes the bank with the power of sale only in the event of Mr. Springfield surviving the testatrix, and the will containing no such provision except in the event Mr. Springfield should survive her, seems to us to render entirely improbable the intention with reference to this feature so zealously contended for by appellants. For what reason could the testatrix desire that her executor should have express powers of sale conferred upon him only upon such contingency as that Mr. Springfield should survive her, and leave out of the will such express power of sale for the payment of debts and legacies in the other contingency—that is, of her surviving Mr. Springfield and her property passing from her directly to the collateral kin?

It seems to us that to say she intended, in the absence of a reasonably clear expression of such intention, either directly or indirectly made, to do this anomalous thing, would be to give to the will a most unnatural effect. In this connection it must steadily be borne in mind that none of the provisions of clause 7 of the will could obtain except upon the condition that Mr. Springfield should survive the testatrix. It will be observed that in no portion of the will is any express power of sale conferred for the purpose of paying debts and legacies, unless such purpose is to be ascribed to clause 7, which, as repeatedly stated, could take effect only upon the condition that Wells Springfield should survive the testatrix. The testatrix could not reasonably have intended to authorize the sale of property by express provision upon the grounds assigned in the argument made for appellants without eliminating such condition and making the express authority absolute. She could not have reasonably intended that upon such condition an express power of sale should exist in the executor for the

purposes assigned by appellants in support of the motion for rehearing, and, at the same time, left the executor to the exercise of its implied powers as such, in the absence of the contingency arising upon which the vitality of clause 7 is based. Subdivision 3 under this clause of the will does provide for a trusteeship, under which the bank is to have the management and control of the property bequeathed to Grafton Wortham Hunt and Zimri Hunt, Jr. This provision, however, as is apparent at a glance, has no relation whatever to the executor's disposal of property for the purpose of paying debts and legacies.

The second ground of criticism in the motion for rehearing, directed against our opinion, is that we were in error in holding that payment of the $25,000 gift to Mr. Springfield out of Mrs. Springfield's separate estate is not dependent upon any special grant of power or authority for its execution. However, it is conceded, as we understand the argument, that the power inheres in the independent executor, without an express provision to make such sale; but appellants contend that, in the absence of an express power of sale for the purpose of paying the legacy, there might be such uncertainty with reference to the validity of the sale as to affect the price. This argument is applied throughout the criticism of our interpretation of clause 7. It is an argument which, while it demonstrates the expediency of giving an executor express power and direction to sell land to pay debts and legacies, fails to disclose to us that clause 7 expresses only an intention to direct the sale of land for such purposes and no other.

We do not agree with appellants' construction of paragraph 5 of the will in relation to paragraph 7. Paragraph 5, we think, must be held to mean that, in the event Mrs. Springfield survives her husband then all of her property, both real and personal, at her death is to pass to her collateral kin according to the specific devises and bequests contained in this paragraph. It also means that, if Mrs. Springfield should predecease her husband, then, in such event the same property is to pass to her collateral kin in remainder upon the termination of the life estate given Mr. Springfield. Unless paragraph 5 is given the effect last stated, then the will nowhere contains any bequest of property in remainder at the end of the life estate. So, Mr. Springfield having survived the testatrix, clause 5 does expressly state that the remaindermen shall receive both real and personal property, and, as stated in our original opinion, since all the personal property passed absolutely to Springfield at Mrs. Springfield's death, no personal property could come into existence, to be received by the remaindermen at the termination of the life estate, except through sale by the bank of at least a portion of the real estate.

We think appellants' exhaustive argument,

intended to establish the proposition that paragraph 7 was necessary, and was intended by Mrs. Springfield in order to make provision for the payment of the $5,000 in cash given to Zimri Hunt out of the undivided one-third of the real estate, and also in order to enable the executor to divide the unequal items of the real estate among the collateral kin, ignores the proposition that paragraph 7, with the express powers therein conferred, was to have effect only in the event Wells Springfield should survive Mrs. Springfield. Accordingly, we again arrive at the same position with reference to the application of paragraph 7 to paragraph 5 that we ultimately come to in consideration of the first proposition appellants seek to establish upon motion for rehearing with reference to the effect of paragraph 7 in its relation to legacies and the payment of debts. In other words, appellants would have Mrs. Springfield, under paragraph 5, making express provision and granting express authority to the executor to make sales for the purpose of carrying out the $5,000 gift to Zimri Hunt, and for the purpose of making partition only in the event her collateral kin inherit as remaindermen upon the termination of the life estate in Wells Springfield; whereas in the event they should inherit the estate, as provided under paragraph 5, absolutely at the death of Mrs. Springfield without the intervention of a life estate, then she leaves them without the benefits appellants contend are conferred by the express provisions of paragraph 7, authorizing sales for the carrying out of the $5,000 gift to Zimri Hunt and making partition. The question naturally arises: Why should Mrs. Springfield be concerned in eliminating uncertainties with reference to the power of sale for such purposes in the event her husband should survive her and have no such concern with reference to these matters in the event he should predecease her?

This same course of reasoning applies to the further proposition, contained in the argument upon the motion for rehearing, to the effect that the express powers of sale contained in paragraph 7 of the will have an appropriate bearing upon the administration of Mrs. Springfield's interest in the community property. If the express provisions of paragraph 7 were regarded as necessary to any disposition of the community property in the event Mr. Springfield survived her, it seems to us that such provision would have been equally important in Mrs. Springfield's estimation in connection with the contingency of her surviving Springfield, so that she would have had the same intention, and would have expressed the same intention, with reference to such express powers of disposition, etc., upon the contingency that she should survive her husband.

Appellants point out in their motion for a rehearing that conditions have now changed,

and that the property under these new conditions will produce revenue to be enjoyed by Wells Springfield without the necessity of a sale. Such conditions were not disclosed in the record upon which our opinion was based and cannot be considered. We have given the most careful consideration to the earnest and impressive argument urged in support of the motion. After consideration of the motion and argument, we are still of the opinon that paragraph 7 of the will created a trust and clothed the bank with the power of sale. Such being the view entertained by us, we think the meaning already given the will by us most probably expresses Mrs. Springfield's intention.

Appellants have insisted from the beginning that the form of the decree entered by the trial court is improper, and urge this matter upon our attention now in the motion for rehearing, as they did when the cause was presented in the first instance. We took no notice of this contention in our former opinion, although we did consider the matter. We have given it consideration again in the light of the contention made in the motion for rehearing. We do not believe the decree is subject to the criticism urged in this respect by appellant, and we decline to reform it as suggested by appellants.

The motion for rehearing is overruled.