A. W. (JAKE) AVIS ET AL V. FIRST NATIONAL BANK OF WICHITA FALLS, TEXAS, TRUSTEE.

No. 8025. Motion No. 15988. Decided July 21, 1943.
Rehearing overruled October 20, 1943.
(174 S. W., 2d Series, 255.)

490

*Weeks, Hankerson & Surles* and *Russel Surles*, all of Tyler, for petitioners.

It was error for the Court of Civil Appeals to hold that the execution of an oil and gas lease by a testamentary trustee would, in fact, be a sale of the oil, gas and other minerals under the land, and, therefore, was expressly authorized under the express grant of the power to sell said land. Bean v. Bean, 79 S. W. (2d) 652; Bolton v. Rouss, 144 La. 134, 80 So. 226; Ehlinger v. Clark, 117 Texas 547, 8 S. W. (2d) 666; Jackson v. Templin, 66 S. W. (2d) 666.

*Kilgore & Rogers* and *Jno. E. Kilgore*, of Wichita Falls, for respondents.

The will under consideration by necessary implication authorizes the trustee to execute oil, gas, and mineral leases. Crawford v. El Paso Land Imp. Co., 201 S. W. 233; Faulk v. Dashiell, 62 Texas 642; Vardeman v. Lawson, 17 Texas 11, 18; Hunt v. Carroll, 157 S. W. (2d) 429; 44 Tex. Jur., Wills, par. 138.

*Charles L. Black*, of Austin, *Joiner Cartwright*, of Beaumont, *J. M. Timmins, Martin A. Row, Walace Hawkins, R. T. Wilkinson, Jr., Earl A. Brown, Eugene DeBogory, Chas. B. Ellard, S. M. Leftwich, G. W. Schmucker, Bromberg, Leftwich, Gowan & Schmucker, Coke & Coke, Hamilton, Lipscomb, Wood & Swift, Carrington, Habberton, Johnson & Walker*, all of Dallas, *Dan E. Lydick* and *B. L. Agerton*, both of Fort Worth, *E. E. Townes, R. E. Seagler, H. P. Pressler, Robert F. Higgins, J. E. Price, J. V. Wheat, Fred L. Williams, Jesse J. Lee, Irl F. Kennerly, W. M. Streetman, W. O. Crain, Wm. E. Loose, Wm. A. Vinson, Charles I. Francis*, all of Houston, *Leroy G. Denman* and *Denman, Franklin & Denman*, all of San Antonio, filed briefs and written arguments as amici curiae.

MR. JUSTICE SHARP delivered the opinion of the Court.

This cause is before us on motion for rehearing. We have decided to withdraw the original opinion in this case and substitute the following in lieu thereof:

This suit was brought by the First National Bank of Wichita Falls, Texas, as testamentary trustee, to have the last will of J. D. Avis, deceased, construed. The beneficiaries under the trust created by the will, and the ultimate beneficiaries after the ending of the trust, in so far as they were at the time of the suit in being, together with the wives and husbands of such beneficiaries, were made parties defendant. The only question involved is whether or not the language of the will creating the trust empowered the testamentary trustee to execute and deliver mineral leases—specifically oil and gas leases—on the land belonging to the trust estate. Some of the defendants contested the power of the trustee to make such leases. The trial court, acting without a jury, construed the will as giving the trustee bank "plenipotentiary" powers, including the authority "to execute, acknowledge and deliver mineral leases and mineral leasehold estates upon lands belongings to said trust estate." The defendants appealed, and the Court of Civil Appeals affirmed the judgment of the trial court. 162 S. W. (2d) 1072.

J. D. Avis executed his will on November 16, 1931, and died on September 29, 1935. The will was admitted to probate in Wichita County on the 2d day of November, 1935. The pertinent parts of such will relating to the question before us are as follows:

By paragraph No. 2 of the will the testator appoints the First National Bank of Wichita Falls, Texas, "my independent executor and trustee, under this my last will and testament, and as such executor, I give to said First National Bank of Wichita Falls, Texas, the full and ample powers conferred upon it as Trustee," and it provides that no security or bond be required in either capacity, and for independent administration. In case of the Bank's refusal or failure to act, it provides for the appointment of a substitute trustee, who shall give bond, and thereupon succeed to all of the rights of the original trustee. We quote from the will the following:

"3.

"I hereby give, devise and bequeath all of my property, real personal and mixed of every kind and character, of which I may die seized and possessed, after the payment of my just and lawful

debts, unto said First National Bank of Wichita Falls, Texas, as trustee, and unto its successor in this trust, for the uses, purposes and trusts hereinafter specified; and I hereby direct that all of said property together with any changes or accretions thereto, shall be held, used, managed, disposed of, sold, disbursed by said trustee, according to the further terms of this will; and I do hereby grant to said trustee full, ample, complete and absolute power to manage, control, sell, and dispose of said trust property, rent, make leases thereon, and in every way handle same, subject only to the express limitations hereinafter contained.

## "4.

"I hereby declare that all of the property that I now own or possess is the community property of myself and my wife Minnie Ola Avis, with the exception of the following, viz.: seventy shares of stock in the First National Bank of Wichita Falls, Wichita County, Texas; and twenty-five shares of stock in the First National Company of Wichita Falls, Texas, is separate property, having been purchased with money received directly from my mother's estate; the property situated at the corner of ninth and Burnett in the City of Wichita Falls, being 150 feet by 200 is also separate property, I having received it directly from my mother's estate.

## "5.

"I hereby direct that immediately upon my death, that my trustee herein appointed, shall take full and complete charge of my estate, attend to the probating of this will, and pay my debts and funeral expenses. After that is done, I direct that my trustee shall keep the corpus of my estate intact, if possible, and so far as practical, until the death of my wife, subject to the provision hereinafter contained in reference to her remarriage; and shall pay over to said Minnie Ola Avis, the entire net income from my estate during her lifetime, and as often and at such times as the receipt of income from said estate will justify and shall be deemed expedient by my trustee, but preferably monthly, or quarterly, it being my desire that my said wife shall have ample funds at all times.

## "6.

"In the event that my wife should remarry, after my decease, then I direct that my said trustee shall make an immediate settlement of my entire estate, by setting over or paying to my wife, one-fourth of same, the other three-fourths to be immediately distributed equally between our seven children, F. P. Avis,

J. D. (Dave) Avis Jr., A, W. (Jake) Avis, Mrs. W. F. Weeks, Mrs. H. S. Baum, Mrs. W. U. McCutchen and Mrs. Ralph Dunkelberg, the said trustee being fully empowered to make such disposition of my estate as will enable it to make fair division, giving one-fourth to my wife, and the other three-fourths equally to the children.

"7.

"But if my wife shall survive me, and shall not remarry, then at her death, I direct that said estate shall be immediately divided by said trustee, among my children, above named, in equal proportions.

"And in connection with any division of my estate among my children, I direct that if any of my children above named shall at that time have died, then said trustee shall pay over to that child's natural heirs, that child's portion of my estate; and if that child having died, left no natural heirs, then said portion to be divided equally among the living children, or their natural heirs.

\* \* \* \* \* \* \*

"10.

"There shall be no liability on said trustee for loss resulting from the administration of this trust, except such as occurs through wilful neglect of said trustee, but I admonish such trustee to handle said property as discreetly as it has heretofore managed its own business for many years past."

There are other portions of the will that are not material to the question before us for decision.

The express limitations contained in said will are as follows: (1) That all of testator's debts and funeral expenses shall be paid; (2) that the trustee shall keep the corpus of the estate intact, and that testator's wife shall be paid certain sums as provided in paragraph No. 5; (3) that in the event testator's wife survives him and remarries, his estate shall be divided as provided in paragraph No. 6; and (4) that in the event testator's wife survives him and does not remarry, at her death his estate shall be divided as provided in paragraph No. 7.

J. D. Avis at the time of making his will, and at the time of his death, and for a long time prior thereto, was a citizen of Wichita Falls. He was a shrewd business man, and accumulated quite an estate; and he selected the Bank as independent execu-

tor and trustee to handle his estate. It is undisputed that no oil and gas lease has been executed by the trustee on the land in question. The testator's wife is living and has never remarried. The sole question presented for determination is whether, under the terms of the will made by J. D. Avis, the First National Bank of Wichita Falls, Texas, as trustee, has the power to execute mineral leases on lands held by it as such trustee.

■ The primary rule governing the construction of wills is to ascertain the intention of the testator. This intention, if possible, should be gathered from the instrument itself. Furthermore, in order to ascertain the intention of the testator expressed in the will, the language used therein may be construed in connection with the surrounding facts and circumstances existing at the time the will was made. Hassell et al v. Frey et al, 131 Texas 578, 117 S. W. (2d) 413; Wallace et al v. First Nat'l Bank of Paris, 120 Texas 92, 35 S. W. (2d) 1036; Federal Land Bank of Houston v. Little, 130 Texas 173, 107 S. W. (2d) 374.

■ Another rule in the construction of wills, which merits serious consideration, is stated by Corpus Juris, Vol. 69, p. 80, Wills, sec. 1136, as follows: "* * where the meaning of the language used in the will has been settled by usage and sanctioned by judicial decisions, it is presumed to be used in the sense that the law has given to it, and should be so construed, unless the context of the will shows a clear intention to the contrary."

■ Whatever confusion may have existed years ago about the nature of an oil and gas lease, caused by early opinions of this Court, same was clarified by its later opinions. This Court has definitely declared that an oil and gas lease is the same as a sale of real estate. Texas Company v. Daugherty, 107 Texas 226, 176 S. W. 717; Stephens County v. Mid-Kansas Oil & Gas Co., 113 Texas 160, 254 S. W. 290; Texas Company v. Davis, 113 Texas 321, 254 S. W. 304, 255 S. W. 601; Sheffield v. Hogg, 124 Texas 290, 77 S. W. (2d) 1021, 80 S. W. (2d) 741; Sheppard v. Stanolind Oil & Gas Co., 125 S. W. (2d) 643 (writ refused); "The Nature of the Property Interests Created by an Oil and Gas Lease in Texas," by Prof. A. W. Walker, 8 Texas Law Review, p. 483.

Prior to the date of this will, this Court had held that the power to sell lands authorized by the Constitution included the power to execute oil and gas leases covering such lands. Sec-

tion 12 of Article 7 of the Constitution provides that "the land herein set apart to the University fund shall be sold under such regulations, at such times, and on such terms as may be provided by law; * * *."

This Court, in the case of Theisen v. Robison, 117 Texas, 489, 506, 8 S. W. (2d) 646, construed Section 12 of Article 7, supra, and declared: "At the date of the adoption of the Consituation and for prior centuries minerals were usually converted into money by sales working a severance of the mineral estate, consummated by means of writings commonly called leases, * *." This Court accordingly held that the power granted to the Legislature to provide for "sales" of University lands was the power to provide for their sale in the way in which mineral estates have been sold for hundreds of years,—that is, by means of "writings," commonly called leases, for stipulated royalties. The case of Ehlinger v. Clark, 117 Texas 547, 8 S. W. (2d)' 666, which was a companion case to Theisen v. Robison, and decided the same day, involved the validity of an oil and gas lease executed by the Commissioners' Court of Fayette County under Section 6 of Article 7 of the Constitution, authorizing the commissioners' court of each county to "sell or dispose of" its county school lands. The Commissioners' Court executed an ordinary oil and gas lease. The validity of this lease was questioned. The Court of Civil Appeals held that this so-called lease was not a valid exercise of the power to sell. This conclusion was overruled by this Court. After mentioning the cases of Theisen v. Robison and Greene v. Robison, this Court said: "The contract before us is simply the usual one made generally over the country by those who sell mineral rights, and well within the constitutional powers of the Commissioners' Court to make." Starke v. J. M. Guffey Petroleum Co., 98 Texas 542, 86 S. W. 1, involved the power conferred on a private corporation by Article 651, Revised Civil Statutes, to sell, mortgage, or otherwise convey real property. This Court held that such language used in the statute embraced the power to execute an oil lease.

We all know the history of the oil development in this State and the importance of an oil and gas lease. It is also well known that large tracts of land are owned by estates, and that trusts have been created by wills or other documents. When this will was made this Court had held as above indicated. The maker of the will had the right to consider the decisions of the courts of this State at the time he executed his will. By the terms of the will the trustee was authorized to execute an oil and gas lease

on the land conveyed in trust by the will. In support of this conclusion we cite the following cases: Hunt v. Dallas Trust & Savings Bank (Civ. App.), 237 S. W. 605 (writ refused) ; Tholl v. Speer (Civ. App.), 230 S. W. 453; Connely v. Putnam (Civ. App.), 111 S. W. 164; Layman v. Hodnett (Ark.), 168 S. W. (2d) 819; In Re Shaw's Estate, 198 Cal. 352, 246 Pac. 48; Heffelfinger v. Scott, 142 Kan. 395, 47 Pac. (2d) 66; Hill v. Sumner, 132 U. S. 118, 33 L. Ed. 284; United States v. Gratiot 14 Peters 526, 10 L. Ed. 573; First Nat'l Bank in Wichita v. Magnolia Petroleum Co., 144 Kan. 645, 62 Pac. (2d) 891; Heyl et al. v. Northern Trust Co., 312 Ill. App. 207, 38 N. E. (2d) 374.

■■ An oil and gas lease executed by the trustee under the terms of this will would not be one executed in the interest of the life tenant. The substantive rights of the life tenant and the remaindermen would still be preserved. The royalty would go to the remaindermen, and the interest on the royalty would go· to the life tenant. Swayne v. Lone Acre Oil Co., 98 Texas 597, 86 S. W. 740, 69 L. R. A. 986, 8 Ann. Cas. 1117; State v. Hatcher, 115 Texas 332, 281 S. W. (2d) 192; Parker v. Riley, 250 U. S. 66, 70-71; Meredith v. Meredith 193 Ky. 192, 235 S. W. 757; Barnes v. Keys, 36 Okla. 6, 127 Pac. 261; Blakeley v. Marshall, 174 Pa. 425, 34 Atl. 564.

The case of Bean v. Bean, 79 S. W. (2d) 652 (writ refused), is cited as the principal authority against sustaining the right of the trustee in this will to make an oil and gas lease. That case involved the language contained in a power of attorney, which gave an attorney in fact the right "to bargain, sell, grant and convey" certain lands. The primary purpose of the power contained in the instrument in the Bean case was to enable the attorney in fact to attempt to recover the title and possession of certain lands, and it was necessary to institute suit to recover such title. The power of management and control was not required. No title whatever was transferred to the attorney in fact, nor was it the intention of the instrument to do so. For a contract, let us repeat some of the language used in this will, conveying said property in trust to the trustee: "I hereby direct that all of said property together with any changes or accretions thereto, shall be held, used, managed, disposed of, sold, disbursed by said trustee, * * * and I do hereby grant to said truste full, ample, complete and absolute power to manage, control, sell, and dispose of said trust property, * * *." Furthermore, in the Bean case it was a power of attorney which was being construed. In this case it is a testamentary

trust. There is a distinction in the respective rules of construction to be applied to such instruments. Powers of attorney are construed strictly. Wills are accorded a very liberal construction. Calvery v. Calvery, 122 Texas 204, 55 S. W. (2d) 527; Frost v. Erath Cattle Co., 81 Texas 505, 17 S. W. 52; Wisdom v. Wilson, 127 S. W. 1128 (writ refused); 44 Tex. Jur., 700. We therefore hold that the First National Bank of Wichita Falls, Texas, as Trustee, has the power to make a mineral lease on the land held in trust by it.

We are not here construing the terms of an instrument which merely gives a trustee or an attorney in fact the naked power to sell land; nor do we hold that such an instrument would give the trustee or attorney in fact the authority to executee an oil and gas lease upon such land. On that question we express no opinion.

Respondent's motion for rehearing is granted, and the judgment of this Court heretofore entered, reversing the judgments of the Court of Civil Appeals and District Court, is hereby set aside; and judgment is here entered affirming the judgments of the Court of Civil Appeals and District Court.

Opinion delivered July 21, 1943.

Rehearing overruled October 20, 1943.