[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 605 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 606 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 608 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 609 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 611 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 612 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 613 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 614 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 615 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 616 
It is claimed on the part of the heirs of Andrew H. Newcomb, deceased, that he had an interest in lots number 118, 121, 126 and 130½ of the Onondaga salt springs reservation, which descended to them on his death. On the part of the widow of the deceased, it is insisted that the interest of the decedent in said lots, and in the erections thereon, was personal property, subject to distribution as such under the statute. This presents the question raised on this appeal.
The statute provides that whenever several persons shall hold and be in possession of any lands, tenements or hereditaments as joint tenants or as tenants in common, in which one or more of them shall have an estate of inheritance, or for life or lives, or for years, any one or more of them, being of full age, may apply for partition and division of such premises. (2 R.S.,
317, § 1.) The question arises whether the parties to this action or any of them have an estate of inheritance, or for life or lives, or for years, in the above mentioned lots.
The constitution in force, and under which the decedent acquired permission to enter upon these lots, declared that *Page 617 
the legislature should "never sell or dispose of the salt springs belonging to the state, nor the lands contiguous thereto which might be necessary or convenient for their use, but the same should be and remain the property of this state." (Const. of
1821, art. 7, § 10.) The constitution of 1846 made a change in the fundamental law relating to the lands of the state contiguous to the salt springs. Section 7 of art. 7 declares that the legislature shall never sell or dispose of the salt springs belonging to the state. That the lands contiguous thereto, and which might be necessary and convenient for the use of the salt springs, may be sold by authority of law and under the direction of the commissioners of the land office for the purpose therein specified. The permission however, to occupy the lands in question was not acquired under any law passed since the constitution of 1846 was adopted.
The legislature, in addition to the provisions of the constitution of 1821, enacted that the salt springs belonging to the state and the lands contiguous thereto, necessary or convenient to their use, should be and remain the property of the state, and that the legislature could never sell or dispose of the same or any part thereof. (1 R.S., 252, § 1.) This statute was in force in 1850, when the decedent acquired from the state permission to make erections on lot number 130½ for the manufacture of coarse salt. The statute relating to the salt springs makes provision that any individual, or company incorporated pursuant to § 90 of said act, intending to erect works for the manufacturing of coarse salt, before erecting any works on the lands of the state set apart for that purpose, shall make application to the commissioners of the land office, setting forth therein the amount of capital intended to be invested in such manufactory, and the quantity of land necessary to the erection thereof; the commissioners of the land office are then required to set apart such land, or so much as they may deem reasonable for the purpose, in a compact form. Such individual or *Page 618 
company is allowed four years in which to complete the works on the lands thus set apart; and is also required within one year to commence such work and actually expend thereon at least one-tenth part of the capital specified in the application, or such location will become void, and the land thereafter be liable to be located by any other individual or company. Any part of such location which at the end of four years shall not be actually occupied by manufactories of coarse salt, pursuant to the original location, may be again set apart by the commissioners of the land office to any other person or company for the erection of such manufactories. (1 R.S., 267, §§ 90, 91, 92, 93, 94, 95.)
It is admitted, and indeed the whole case shows, that the right of the decedent to make the erections on the state lands for the manufacturing of coarse salt, was acquired in pursuance of the foregoing provisions of the Revised Statutes. Did the decedent acquire thereby an estate of inheritance, or for life or lives, or for years, in said premises? I think not. The object of the constitution, as well as the whole course of legislation, very clearly establishes a settled design to secure and protect the state in the unqualified right, at all times, of resuming the actual control and disposition of the salt springs and the lands contiguous thereto. The state could make no grant of the property; the constitution and the laws had declared that the salt springs and the lands contiguous thereto, which might be convenient for their use, should be and remain the property of the state. No act of the legislature, or of the commissioners of the land office, could in the least degree, transfer or otherwise impair the title of the state; it must vest there and nowhere else. This being so, it necessarily follows that none of the parties to this action can have an estate of inheritance, or for life or lives, or for years in the lots above mentioned.
The legislature, under the provisions of the constitution, authorized the commissioners of the land office to set apart so much of the state lands as they might deem reasonable *Page 619 
for the purpose of an individual or a corporation for the erection thereon of manufactories of coarse salt. No title to the land was transferred thereby, for the obvious reason that the constitution had forbidden it. Nothing could pass, therefore, to the person or company obtaining the right of erecting salt manufactories, except a naked license to enter upon the state lands and make and enjoy such erections during the pleasure of the state. In the opinion of Mr. Justice Paige, delivered in this court in the case of Parmelee v. The Oswego and SyracuseRailroad Company, he remarked that where a party makes a location on any part of the salt springs reservation, erects his buildings for the manufacture of coarse salt within the time prescribed by statute, he acquires no legal interest or estate in the lands covered by the works, and has only an equitable interest in his erections. (2 Seld., 81.) I can see no good reason why the erections made on the lots in question by the decedent, and perhaps the license to occupy the same for the manufacture of salt, may not be regarded as having been made and held for the purposes of trade and manufacture, and consequently pass to his personal representatives.
In conclusion, I am satisfied that neither of the parties has such an estate in the lots above mentioned as will authorize a partition thereof.
The judgments of the general and special terms should be reversed, and the complaint as to these lands dismissed, with costs to the defendant, Mary D. Newcomb.