DUNCAN W. PECK and Others, Constituting the Copartnership Firm of JOHN WHITE & COMPANY, Claimants, *v.* THE STATE OF NEW YORK, Defendant.

## Claim No. 17315.

Court of Claims, October, 1923.

Claim against state — salt springs reservation — constitutional provision in force in 1821 prohibiting the state from selling its salt springs — relocation of claimants' salt works — resolution of commissioners of land office providing for the furnishing of brine to claimants — discontinuance of state in salt industry — state not compelled to furnish brine to claimants in perpetuity — claimants mere licensees — cla'm dismissed.

When the commissioners of the land office set apart to one G. and others, the predecessors in title to claimants, two certain lots on the Onondaga Salt Springs Reservation in the town of Salina, which were not contiguous to the salt springs of the state, the Constitution of the state in 1821, then in force, prohibited the state from selling or disposing of any of its salt springs.

In 1884, pursuant to chapter 391 of the Laws of 1854, the state paid claimants for their vats and works and located an equal amount of acreage in the same town, to which claimants moved their salt works, and the resolution of the commissioners of the land office, under which such payment was made and the ascertained damages sustained by claimants were paid for by the state, provided that claimants should be supplied with brine by the superintendent of the Onondaga salt springs as theretofore at a stated price per bushel of manufactured salt.

When in 1908 the state discontinued all participation in the salt industry it conveyed all its real property and interest in the salt springs used and occupied in the conduct of the business of furnishing brine for the manufacture of salt in Onondaga county to a company and sold all of its pumping plant and brine distributing system to another company, but in neither of these transfers was there any reservation made by the state or any right reserved for the furnishing of brine to claimants nor in either conveyance did the state impose upon the grantee the duty of furnishing brine to claimants.  Upon the hearing of a claim against the state for the difference in the price for brine that the claimants were compelled to pay to the company to which the pumping plant and brine distributing system had been sold  since 1917, and the price the state was receiving for the same service at the time of the change of location of claimants' salt

works, *held*, that there never having been any conveyance of the fee of said lots by the state to claimants or their predecessors in title claimants were not entitled to be furnished brine by the state in perpetuity at the new location although without means of obtaining the brine necessary to utilize their works except from said pumping and distributing system.

The only right that the state had power to grant in the premises was a mere naked license and under the decision in *Newcomb* v. *Newcomb*, 12 N. Y. 603, the claim herein is dismissed.

CLAIM against the state.

*Smith, Hayden & Setright,* for claimants.

*Carl Sherman,* attorney-general (*John H. Clogston,* deputy attorney-general, of counsel), for State.

MORSCHAUSER, J. The claimants filed a claim against the state, alleging that the state contracted to deliver to claimants in perpetuity brine for the production of coarse salt at the price of one cent per bushel of manufactured salt, which is equivalent to thirty-five and seven-tenths cents per ton, and that the state continued furnishing this service at said price down to January, 1908, at which time the state discontinued such service and sold its salt wells, pumping plant and pipe lines to the Onondaga Pipe Line Company, and that thereafter the state discontinued its participation in the salt industry, and in place thereof the Onondaga Pipe Line Company continued to furnish brine to the claimants for the manufacture of salt and charged therefor the sum of one cent per bushel, or thirty-five and seven-tenths cents per ton, the same as had previously been charged by the state, down to the year 1917, when the said pipe line company increased its charge for such service to seventy cents per ton, and beginning with the year 1919 raised the price for such service to one dollar per ton; that the real consideration running to claimants of the agreement between them and the state was that claimants surrendered to the state the possession of twenty acres of land in the city of Syracuse from the subsequent sale of which the state realized over $60,000, in exchange for the same number of acres in the town of Salina, which were of no value to the state or any one else, and that the claimants accepted a lease of the said twenty acres of land in the town of Salina in place of any rights they had in lots 269 and 270 in the Onondaga lands located near Syracuse. Claimants asserted that under such arrangement with the state they were entitled to be furnished brine by the state at the price stated in perpetuity at the new location accepted by them in the town of Salina, and the claim as filed is for the difference in the price for brine that the claimants were compelled to pay to the Onondaga Pipe Line Company and the price that the state

was receiving at the time of the change of location by the claimant to its present site.

The notice of intention to file this claim was filed with the Court of Claims and in the attorney-general's office on March 20, 1922.

The commissioners of the land office, pursuant to the provisions of chapter 231, sections 19–21, of the Laws of 1821, chapter 177 of the Laws of 1822, chapter 326, sections 42, 43, of the Laws of 1825, and incorporated in part 1 of the Revised Statutes of 1827–1828, chapter IX, title 10, article 4, sections 90–97, set apart to, and there was located by, Henry Gifford and others lots Nos. 269 and 270 of the Onondaga Salt Springs Reservation, then in the town of Salina. The claimants, through various transfers, succeeded to the rights and interests of the said Henry Gifford in lots Nos. 269 and 270 and had their salt works located upon said lots until the year 1884 when, pursuant to chapter 391 of the Laws of 1854, under an arrangement with the commissioners of the land office, by resolution, the state paid the claimants for their vats and works and located an equal amount of land in acreage at Liverpool in the town of Salina, and the claimants moved their salt works to the new location. The damages sustained by the claimants were ascertained and were paid for by the state amounting to about the sum of $60,000. In the resolution of the commissioners of the land office it was provided that the claimants "shall be supplied with brine by the superintendent of the Onondaga Salt Springs as heretofore."

The claimants, after the removal to the new location, continued the manufacture of coarse salt and the state continued to operate its pumping plant and distribute brine to the claimants until 1908, and charged for such service the sum of one cent per bushel of fifty-six pounds of manufactured salt.

On June 11, 1908, the state conveyed all its real property and interests in the salt springs used and occupied in the conduct of the business of furnishing brine for the manufacture of salt in Onondaga county to the Mutual Line Company, and sold all of its pumping plant and brine distributing system to the Onondaga Pipe Line Company, and in neither of these conveyances was there any reservation made by the state, or any right reserved, for the furnishing of brine to the claimants, and the state did not impose upon the grantee the duty of furnishing brine to the claimants.

The Onondaga Pipe Line Company continued to furnish claimants with brine at the same price as they had paid the state prior thereto until 1917 when it increased the price of such service and compelled the claimants to pay seventy cents per ton, and in 1919

compelled the claimants to pay one dollar per ton. It appears from the evidence that claimants have no means of obtaining the brine necessary to utilize their works except from this pumping and distributing system.

There was never any conveyance of the fee of lots 269 and 270 to the claimants, or their predecessors, by the state.

By article VII, section 10, of the Constitution of the state of New York in 1821, it was provided that the state should " never sell, or dispose of the salt springs belonging to this state, nor the lands contiguous thereto, which might be necessary, or convenient, for their use, * * * but the same shall be and remain the property of this state."

The Constitution of 1846 made a change in the fundamental law relating to the lands of the state contiguous to the salt springs. Section 7 of article VII declared that the legislature shall never sell or dispose of the salt springs belonging to the state and that the lands contiguous thereto, and which might be necessary and convenient for the use of salt springs, may be sold by authority of law and under the direction of the commissioners of the land office for the purpose therein specified. Similar provision was also made by the legislature. Lots Nos. 269 and 270, occupied originally by Henry Gifford, were not any of the lands located contiguous to the salt springs owned by the state of New York.

These constitutional provisions were not changed or altered and remained in full force and effect until the taking effect of the revised Constitution of 1895, from which all reference to the salt springs, or salt lands, was omitted. The state, after the Constitution of 1821, located certain lands in the Onondaga Salt Springs Reservation and leased them to various salt manufactories for certain terms, and the statute at various times from 1825 provided that such lessees or occupants that had locations on the reservation should have the preference of location and right of priority.

The Constitution in force at the time that Henry Gifford first located his lands on lots Nos. 269 and 270 prohibited the state from selling or disposing of any of the lands in question and, therefore, the state could not grant any rights or interests in said lands in perpetuity to the claimants, or their predecessors in title. It has been held that the only right that the state might grant is a mere license. *Newcomb* v. *Newcomb*, 12 N. Y. 603. Judge Crippen in writing the opinion said: " The legislature, under the provisions of the constitution, authorized the commissioners of the land office to set apart so much of the state lands as they might deem reasonable for the purpose of an individual or a corporation for the erection thereon of manufactories of coarse salt. No title

to the land was transferred thereby, for the obvious reason that the constitution had forbidden it. Nothing could pass, therefore, to the person or company obtaining the right of erecting salt manufactories, except a naked license to enter upon the state lands and make and enjoy such erections during the pleasure of the state."

Under the above decision the state, or any of its commissioners, had no power or authority to grant or dispose of any interest that the state had in the lands of the Onondaga Salt Springs Reservation.

The claim is, therefore, dismissed.

CORWIN, J., concurs.

Judgment accordingly.